[Civil No. 3779. Filed July 12, 1937.]

[70 Pac. (2d) 443.]

MIGUEL HIDALGO and MAGGIE H. HIDALGO, His Wife, Appellants, v. THOMAS N. McCAULEY, Appellee.

Messrs. Cusick & Lyons and Mr. George O. Hilzinger, for Appellants.

Mr. William R. Chambers and Mr. Richard H. Chambers, for Appellee.

LOCKWOOD, J.—This is an appeal by Miguel Hidalgo and Maggie H. Hidalgo, his wife, hereinafter called plaintiffs, from a judgment in favor of Thomas N. McCauley, hereinafter called defendant. There are many assignments of error, but we think the case can, and should, be disposed of upon a determination

of the question whether or not the complaint stated a cause of action as against the defendant. We, therefore, shall consider the case primarily from that angle. The complaint is a voluminous one, and we think it unnecessary to quote it in full. The substance of its allegations may be stated in a narrative form as follows.

On the 9th day of February, 1928, the plaintiffs were the owners of certain real estate in Tucson, situated next to the Santa Rita Hotel, one of the leading hostelries of that city. One of the codefendants of McCauley, Archie C. Shreve, was a leading spirit in the activities of another codefendant, Overland Hotel & Investment Company, a corporation, hereinafter called the company, organized under the laws of the state of Nevada and authorized to do business in Pima county. Shreve, desiring to secure the real estate in question for the company, offered to purchase it on the following terms: $2,000 in cash, a $12,000 mortgage on the property to be assumed by the company, and the delivery to plaintiffs of 800 shares of prior preferred shares and 1500 shares of preferred stock of the company. At the time of the sale, Shreve represented to plaintiffs that the prior preferred stock was worth $8,000 and the preferred stock was worth $15,000, and that they would produce a substantial income, and they made the trade relying upon his representations as to these values. As a matter of fact, it was well known to Shreve that such stock was utterly worthless. On the 23d of February the property was deeded to the company, and it paid the sum of $2,000 in cash and delivered the stock as agreed upon, and thereafter discharged the mortgage which it had assumed to pay.

It was then alleged that shortly after the transaction had been consummated, defendant McCauley, who

then knew of the various misrepresentations of Shreve in regard to the value of the stock and their falsity, together with Shreve and others

"conspired together for the fraudulent purpose of making said stock of the Overland Hotel and Investment Company utterly worthless and valueless to the end that the said Thomas N. McCauley should eventually acquire the real estate herein first described by and through his agents and dummies, for little or nothing and preventing these plaintiffs from rescinding said contract of sale, and securing said real estate, and to cheat and defraud them of any value which the said. stocks might have."

The complaint then continued by setting up the various means through which the value of the company's stock was depressed, and by which McCauley gained possession of the property involved. Damages were alleged in the sum of $23,000, and the prayer for judgment was for a judgment in favor of the individual plaintiffs in such sum of $23,000, with interest and costs, and for no other relief.

It is apparent from the foregoing recital that the complaint sets up two different and independent causes of action. The first is the securing of the title to the property in question from plaintiffs for the company by the representations of Shreve that the stock, which was the major portion of the purchase price, was worth approximately $23,000, when, to his knowledge, it had no value whatever. The facts pleaded in regard to this constitute a cause of action against Shreve for deceit, but we cannot see how McCauley is affected in any manner thereby. There is no allegation whatever that he played any part in the planning or execution of the deal between Shreve and plaintiffs, or had any knowledge of it until after the transaction had been completed. The complaint then alleges that after

the purchase and sale aforesaid had been completed, all of the defendants conspired together for the purpose of making the stock, which was part of the purchase price of the property, worthless and valueless, so that McCauley could eventually secure the real estate in question for little or nothing, and the manner in which the conspiracy was carried out is set up with considerable detail.

These latter allegations of the complaint doubtless state a cause of action against the alleged conspirators, with the gist of the conspiracy being the making of the stock of the company worthless. That such an action lies, cannot be questioned, but the all-important question herein is, who may bring such an action, and for whose benefit must it be brought? The leading case upon this point is that of *Green* v. *Victor Talking Machine Co.*, 24 Fed. (2d) 378, 380, 59 A. L. R. 1091, decided by the circuit court of appeal of the second circuit, and *certiorari* later denied by the Supreme Court of the United States (278 U. S. 602, 49 Sup. Ct. 9, 73 L. Ed. 530). In that case, the gist of the complaint was that the defendant, after inducing plaintiff's testator to purchase certain shares of stock in the corporation, impaired the value of such stock by certain acts, which it is contended were illegal, for the purpose of destroying the value of the stock. The court said:

"When there are numerous shareholders, it is apparent that each suffers relatively, depending upon the number of shares he owns, the same damage as all the others, and that each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Obviously it is sound policy to require a single action to be brought by the corporation, rather than to permit separate suits by each shareholder. In logic the result is justified, because the only right of the shareholder which has been infringed

is what may be called his derivative or corporate right. Having elected to conduct their business in a corporate form, the men behind the corporation have, in the phrase of Justice Holmes, 'interposed a nonconductor' between themselves and those who deal with them in their corporate enterprise. [Citing cases.] Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons. Therefore even a sole shareholder has no independent right which is violated by trespass upon or conversion of the corporation's property. Only his 'corporate rights' have been invaded, and consequently he cannot sue the tortfeasor in an action at law. [Citing cases.]

"Admitting this to be the general rule, the appellant contends that the result is different when a tortfeasor is animated by malice toward a particular shareholder, and that in such circumstances the principle that intentional harm without justification is actionable gives the shareholder a personal right of action, whether he is a sole shareholder or one of many. With this contention we cannot agree. Assuming that the allegations of the complaint are adequate to charge that the defendant's motive in doing the above-mentioned affirmative acts to the injury of the corporation's credit and business was a malicious desire to damage plaintiff as a shareholder, the cause of action is still the corporation's. The intention of the defendant is to invade the 'corporate rights' of the shareholders; that is, the corporation's rights, whether this end is desired as a means of satisfying a grudge against some particular shareholder or all of them, or for some other motive. A defendant's motive in interfering with the corporation's business may be material in determining whether his interference is tortious or privileged, as in the case of fair competition; but his motive will not of itself create an independent cause of action in favor of shareholders, because only their derivative or corporate rights have been infringed. The policy of having their remedy lie

in a suit by the corporation is not affected by the wrongdoer's malice toward an individual shareholder.

"For a shareholder to obtain a personal right of action there must be relations between him and the tort-feasor independent of those which the shareholder derives through his interest in the corporate assets and business."

This case has been repeatedly cited since its decision, and always with approval. Counsel for plaintiffs have called our attention to a number of cases which, they contend, take a different view of the law. We have examined these cases, and are satisfied that in so far as they hold the action lies in favor of an individual shareholder, it is under the circumstances set out in *Green* v. *Victor Talking Machine Co., supra,* where there were relations between him and the alleged tort-feasor independent of those which he derived through his interest in the corporate business. An attempt to bring the case within this rule is obviously the reason for all the allegations in the present case in regard to the sale of the property by plaintiffs to the company. We think, however, these very allegations show on their face that no such relationship existed between plaintiffs and defendant McCauley. Nowhere is it alleged that the latter had anything to do with the fraudulent representations in regard to the sale of the property, or, indeed, any knowledge thereof, until after the sale had been fully consummated.

The fact that the complaint in reality set up two distinct and independent causes of action, the one against Shreve and the company for deceit, and the other against Shreve, McCauley, and their co-conspirators for conspiracy to ruin the company may be shown by examining the question of what would be the proper measure of damages in case a recovery could be had at all. If the only action was on account of Shreve's fraudulent representations to the plaintiffs as to the

value of the stock which they accepted, the damages would be the difference between what the stock was actually worth at the time they got it and what Shreve had represented it to be worth, in this case presumably the $23,000 asked for. If, on the other hand, the gist of the action was the conspiracy to depress the value of the stock, the measure of damages would be the difference between what the stock was actually worth before the conspiracy was entered into and what it was worth after the conspiracy had been consummated, which we should infer from the complaint would be nothing, for plaintiffs alleged that the stock was worthless at the time they took it, before the conspiracy, and it could have been no less than worthless when the conspiracy was consummated. It, therefore, appears that not only were two causes of action improperly joined, but that the one which the plaintiffs were entitled to maintain in their individual capacity, to wit, against Shreve and the company for fraudulent representations as to the value of the stock, did not lie against McCauley at all, while the one which, under the allegations of the complaint, did lie against McCauley could only be a representative one for the benefit of the corporation. The complaint was, therefore, obnoxious to a general demurrer on the ground that it did not state a cause of action in favor of plaintiffs and against defendant McCauley under any theory to be found therein.

■■ But, say plaintiffs, even assuming that this be true, it was improper to instruct the jury to return a verdict in favor of defendant McCauley, as was done in this action. The situation under which the instructed verdict was returned was as follows: The defendant McCauley had demurred to the complaint on the ground that it failed to state a cause of action against him; that two causes of action were improperly

joined, and that it appeared upon the face of the complaint that he was improperly joined as a party defendant. This raised the sufficiency of the complaint from every angle which we have discussed in this opinion. The demurrer was, however, overruled, and the case went to trial before a jury. After several days, counsel for McCauley again called to the attention of the court that they believed there was no cause of action stated against him, and for the purpose of making the record complete, they objected to any further evidence on the ground that the complaint did not state a cause of action as against defendant McCauley. The court said that the objection would be overruled for the time being, but that the matter might be presented again at the close of plaintiffs' case. The case went on for some time further, and the plaintiffs having rested, counsel for McCauley moved to strike all the evidence against him, and also that a verdict be directed in his favor on the ground that no cause of action against him was stated by the complaint. After the matter had been argued and taken under advisement overnight by the court, the motions were granted.

We cannot see where, under the law as we have stated it to be, the court could well, at that stage of the proceedings, have done otherwise. It is, of course, true that it might, and probably should, have sustained the general demurrer when filed, and, if plaintiffs declined to amend, have rendered judgment for defendant McCauley upon the pleadings. But the court has a right to correct such an error at a later stage of the proceedings. This might have been done, of course, by taking the case from the jury, and then rendering judgment on the pleadings in favor of defendant McCauley. But the same ultimate result was reached by instructing the jury to return a verdict in his favor,

on the ground that under no circumstances could one have been returned against him, and then rendering judgment on that verdict. If error was committed at all, it was of such a technical nature that we think it would be rather absurd to reverse the case on that ground, with the certainty that the same judgment must ultimately be rendered. This is not a case of a judgment *non obstante veredicto,* which we have held cannot be rendered in Arizona, but a judgment upon an instructed verdict, which is a very common proceeding.

We think it is unnecessary to consider any of the other points raised by plaintiffs. Since under no theory of the pleadings or the evidence could they maintain an action against defendant McCauley in their individual capacity, we think it would be hypercritical to reverse the case, even if the judgment was rendered in an irregular manner, when the only effect would be to cause the trial court to then render the same judgment upon the pleadings.

For the foregoing reasons, the judgment of the superior court of Pima county is affirmed.

McALISTER, C. J., and ROSS, J., concur.