246 P.2d 184

## FUNK v. SPALDING.

No. 5482.

Supreme Court of Arizona.

July 15, 1952.

Harold R. Scoville, Charles A. Stanecker, of Phœnix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment in favor of appellee Spalding and against appellant Funk in the sum of $4,496.50.

The cause of action arose out of the operation of the Phœnix Softball Park. This sports enterprise was begun in 1935 or 1936 and operated as a partnership until June 1937 when the business was incorporated as Phœnix Softball Park, Inc. 35 shares of stock were issued to Spalding; 34 shares to Funk and one share to Jacob Morgan, attorney, which was immediately endorsed over to Funk. Spalding claimed in his complaint that the business continued to be operated as a partnership until he left for service in the Navy in April 1943. The facts are, however, that although no stockholders' or directors' meetings were ever held, the business was conducted under the name of Phœnix Softball Park, Inc. The bank account was carried in that name; all checks were signed by the corporation and both the state and federal income tax returns were made out in the corporate name. Registration fees were paid to the Arizona Corporation Commission up to and including 1940 but no report required by law to be returned therewith was ever made. The charter of the corporation was revoked by the Corporation Commission in 1948 for failure to comply with the law above mentioned.

Leslie C. Hardy, of Phœnix, for appellant.

Apparently interest in softball as a sport fluctuated considerably between 1935 and 1945, and receipts varied according to such fluctuations. In April 1943 Spalding was called into the U. S. Naval services and remained there until November 6, 1945. He testified that when he received his orders to report for service he talked with Funk and the latter stated to him "Well I will try to keep it running. If there is anythink to it we will divide it up."

In 1943 the state income tax report showed a loss of over $300. In 1944 and 1945 these returns showed a profit. In fact, according to Funk 1945 was the most successful year in the history of the Softball Park operations. Spalding received $200 from the business while in the service. When Spalding returned home in November, 1946 Funk informed him that he had plans for enlarging the operations at the Park to include a dog racing track and that the cost of improvement as planned would be $35,000 to $50,000 and offered him a one-fourth interest for $10,000. This plan would involve razing the buildings and improvements then in use in the Softball Park. Spalding vacillated for some time as to whether he would or would not participate in the new project, a part of which included the reincorporation of the business under the name of Western Amusements, Inc. He finally decided against participating in it. The project was carried out however; a new corporation organized; the old improvements were removed and salvaged; new improvements constructed and the Park greatly enlarged. The salvage value was fixed by the contractor who constructed the new improvements at around $1,730, half of which was paid to Funk and the other half offered to Spalding which he declined to accept and thereupon brought this action for an accounting and for judgment for the amount shown to be due him.

Appellant Funk has contended throughout that Spalding may not maintain this action for the reason that if any wrong has been committed by Funk it amounts to a tort and specifically to a conversion of corporation funds and assets and for such wrong only the corporation may complain; that only after its refusal to act at his request to do so may Spalding as a stockholder maintain such an action; that said action in such event could be brought only on behalf of the corporation for the benefit of all stockholders and that such action is purely representative or derivative.

All of appellant's assignments of error are directed at this one question. Concededly Spalding did not request the corporation to institute action against Funk for conversion of corporate funds. But such a request would obviously have been futile. And it is the general rule of law that where funds are converted or other acts committed by the officers or directors of a corporation or other person which has the effect of depressing the market value of the stock of the corporation, that the damage flowing therefrom is to the cor-

poration; that it alone has a right of action against the wrongdoer; that no right of action may be maintained by a stockholder until after refusal of the corporation upon request to institute such action (unless such a request would be futile). Hidalgo v. Mc-Cauley, 50 Ariz. 178, 70 P.2d 443; Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898, 900, 197 A.L.R. 271.

There is, however, an exception to this rule which is as well established as the rule itself. In recognizing this exception the court in Sutter v. General Petroleum Corp., supra, cited by appellant said:

"* * * Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity. Under proper circumstances a stockholder may bring a representative action or derivative action on behalf of the corporation. (Citing cases.) But 'if the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action. * * * The action is derivative, i. e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' (Citing cases.) And a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong. (Citing cases.)"

■ In the instant case the evidence is in conflict on the question of whether there was an express oral contract between Spalding and Funk as to what Funk should do and how the profits should be divided during the enforced absence of Spalding. The court made no findings of fact in this case but we must assume that it did find adequate facts upon which to base its judgment. Leggett v. Wardenburg, 53 Ariz. 105, 85 P.2d 989, and we are required to consider the evidence in the case in its strongest light to support the judgment rendered. In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238. Even if there was no express agreement between Funk and Spalding, when Funk took over the management of the corporation during the absence of Spalding the law implied an agreement between them that Funk would pay to Spalding his share of the profits of the business.

■ In any event the failure of Funk to pay Spalding his share of the profits

did not result in injury to the corporation. It lost nothing. The profits were, strictly speaking, not an asset. They constituted an obligation due the stockholders. Funk's failure to properly distribute the profits resulted solely in an injury to Spalding. Thus it falls squarely within the exception to the rule laid down in Sutter v. General Petroleum Corp., supra.

 The exception is applied equally where there exists a fiduciary relationship between the parties which requires the wrongdoer to protect the interest of the stockholder and that duty has been violated and full relief to the stockholder cannot be had through a recovery by the corporation. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216. Certainly there was a fiduciary relation existing between Spalding and Funk. As a result of their long association they had absolute confidence in each other. Even at the trial of the cause, Spalding's confidence in Funk still continued in a large degree unshaken. Spalding's enforced absence from the business while engaged in the service of his country placed upon Funk as manager of the corporation the duty to protect Spalding's interest in the business and to strictly account to him for receipts, disbursements and profits. This he did not do. No books were kept. In fact nothing appears in the records kept to show for what purpose hundreds of dollars' worth of checks payable to cash were used. The following are a few of the cases holding that a stockholder may maintain a cause of action where the duty of the wrongdoer to the stockholder arises out of contract: Korndoerfer v. Nat'l Bank, Sup. 21 N.Y.S.2d 987; Chase Nat'l Bank v. Sayles, D.C., 30 F2d 178; Stinnett v. Paramount–Famous Lasky Corp., Tex.Com. App., 37 S.W.2d 145; Ritchie v. McMullen, 6 Cir., 79 F. 522. This court in Hidalgo v. McCauley, supra, [50 Ariz. 178, 70 P.2d 446] recognized the right of a stockholder to sue a wrongdoer under circumstances " * * * where there were relations between him (the stockholder) and the alleged tort-feasor independent of those which he derived through his interest in the corporate business." We think the instant case falls squarely within the language above quoted.

No question is raised concerning the amount of the judgment awarded and there is nothing in the record indicating what portion is based upon profits for which no accounting has been made or what portion, if any, is based upon the value of the assets of the corporation including personal property and good will. In fact the sufficiency of the evidence to support the judgment is not questioned. As above stated appellant based his appeal solely upon the claim that a stockholder in appellant's position has no right to maintain such an action as this.

We hold that appellee did have such right based upon a contract express or implied with appellant to operate the business

during the absence of appellee and to pay to him his share of the profits; that the gravamen of the complaint is not an injury to the corporation but to the appellee. The corporation as such is not concerned whether Spalding or Funk actually got the profits. Whether profits were paid to one or the other or to both of them in equal amounts or in any other proportion could not affect the corporation one way or the other. The profits involved were earned and due to be distributed to the stockholders. Their payment to whomsoever paid does not affect the assets of a corporation nor the market value of its stock.

We recognize that there is a distinction between the legal status of profits to be distributed pursuant to contract between Spalding and Funk and the physical assets and good will of the corporation. And if Phœnix Softball Park, Inc., had been a going concern or had legal corporate existence at the time of trial or if there had then existed an outstanding indebtedness against such corporation, only the corporation or Spalding in a representative capacity could have maintained an action based upon the sale of corporate assets at an inadequate price. The reason being, in that event, that a dissipation of the assets would directly damage the corporation. It would destroy the value of the outstanding stock of all the shareholders or if the corporation had been dissolved as in this case and there existed an outstanding indebtedness it would prevent the corporation from paying its debts. But none of the above conditions were shown to exist in the instant case.

Under the undisputed facts of this case the question raised becomes purely technical. For the purpose of considering the question let us assume that the corporation should have originally instituted this cause of action upon the theory that the corporation had been damaged. The question then presents itself, has the corporation been damaged by reason of the action having been brought by the stockholder instead of the corporation? The evidence presented both for the defendant and the plaintiff is exactly what it would have been had the action been brought by the corporation. One of the primary purposes of bringing the action in the corporate name is to prevent a multiplicity of actions. Another reason, of course, is that the corporation, in the ordinary case, is directly damaged and has the sole right as a separate legal entity to maintain such action except when the facts and circumstances bring it within the exception above set forth. But to set aside the judgment upon the ground presented by appellant, would under the circumstances, result in retrying the case on behalf of the corporation based upon the same testimony and presumably reaching the same ultimate result. It would increase litigation instead of minimizing it; it would be expensive to both parties litigant and it would interfere with them in putting their best efforts

226

in their respective business activities. Appellant has not been damaged. And if it were conceded that appellee did not originally have the right to bring this action this court said in Norton v. Steinfeld, 36 Ariz. 536, 288 P. 3, 6:

" * * * 'It is usually regarded as permissible to substitute as plaintiff the person who has the right to sue,' according to 31 Cyc. 485, 'where an action has been brought originally in the name of one having no right, in case the cause of action and the amount of recovery remain the same, and defendant is deprived of no defense available to him at the beginning of the suit.' The relief sought and the liability for which appellee was called to answer were the same whether the Corporation or the stockholders were the plaintiffs and the substitution deprived appellee of no defense that was available to him before it was made. * * * "

If substitution of parties plaintiff can be made where the action was originally brought by one not having the right to bring it, it follows that where one originally does not have the right to bring the action, if the situation changes giving him that right he may prosecute the cause to judgment without an order of court. We hold, however, that appellee did have the right originally to bring this cause of action for his share of the profits, based upon contract with appellant, and under the rule laid down in Norton v. Steinfeld, supra, he had the right to proceed to judgment for damages for alleged dissipation of the improvements and good will of Phœnix Softball Park, Inc.

The judgment of the trial court was based upon conflicting evidence and as we have so often said, we are bound by such finding.

Judgment affirmed.

UDALL, C. J., and STANFORD, DE CONCINI, and LA PRADE, JJ., concurring.