690 P.2d 114

**H.N. SCHROEDER and Jacqueline V.
Schroeder, husband and wife,
Plaintiffs-Appellants,**

v.

**Richard S. HUDGINS, and Robertson,
Molloy, Fickett & Jones, P.C.,
Defendants-Appellees.**

**2 CA–CIV 4733.**

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 21, 1984.

Review Denied Oct. 23, 1984.

J. Marc Montijo, Tucson, for plaintiffs-appellants.

Chandler, Tullar, Udall & Redhair by Edwin M. Gaines, Jr., Dan Cavett, Tucson, for defendants-appellees.

## OPINION

BROOKS, Presiding Judge.

Appellants, Henry and Jacqueline Schroeder, brought suit against Attorney Richard S. Hudgins and Robertson, Molloy, Fickett & Jones, P.C., the law firm with which Hudgins was associated. The complaint charged that appellees (1) were negligent in the performance of their duties as legal counsel for appellants; and, (2) breached their fiduciary duty toward appellants in continuing to represent them after a conflict of interest arose between their obligations to appellants and those owed to another of the firm's clients. Appellees moved for summary judgment; the requested relief was granted and this appeal resulted.

On this appeal, appellants assert that the trial court erred in the following rulings:

(1) That the complaint, brought in appellants' individual capacities, failed to state a cause of action;

(2) That the doctrine of judicial estoppel precludes appellants from asserting a cause of action against appellees; and

(3) That the action is barred by the running of the applicable statute of limitations.

In reviewing the trial court's grant of summary judgment, this court must view the evidence in the light most favorable to appellants, giving them the

benefit of all favorable inferences that may reasonably be drawn therefrom. *Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 626 P.2d 602 (App.1981); *Schmidt v. Mel Clayton Ford,* 124 Ariz. 65, 601 P.2d 1349 (App.1979). In the event no triable factual issue exists, we must then determine whether the substantive law was correctly applied and the moving party entitled to summary judgment as a matter of law. *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982); *Long v. Buckley,* 129 Ariz. 141, 629 P.2d 557 (App. 1981).

Appellant, Henry N. Schroeder, was the sole owner of the corporate stock in Howlen Corporation, a California corporation which became the sole shareholder of Great Frontier Properties, Inc., (hereinafter referred to as Great Frontier), an Arizona corporation. In 1973, Great Frontier purchased a 33 acre subdivision known as Rolling Hills Vista from M.M. Sundt Construction Company (hereinafter referred to as Sundt); 19 acres were zoned for single family homes and 14 acres were zoned for multifamily use. Sundt took back a first mortgage on the property but agreed, by the terms of a purchase agreement, to subordinate its lien interest to the construction financing which Great Frontier would obtain to develop the site. On June 8, 1973, Great Frontier entered into two loan agreements with Lomas & Nettleton Financial Corporation (hereinafter referred to as Lomas & Nettleton) for the financing of the off-site construction of the single family portion of Rolling Hills Vista. One promissory note in the sum of $230,000 was to provide funds for the off-site development of the 19 acre parcel; a second note in the sum of $470,000 was to finance the construction of single family residences. Appellants backed these loans by a guarantee agreement executed in their individual capacities. By November 1973, Great Frontier was financially overextended, the $230,000 loan was in default and liens had been filed against the Rolling Hills Vista Property for unpaid bills. The monetary difficulties arose out of Great Frontier's attempt to complete off-site improvements for the entire 33 acres with the $230,000 fund designated by the lender for development of only the 19 acre single family home section.

In the summer of 1973, Attorney Richard S. Hudgins, an associate of Robertson, Molloy, Fickett & Jones, P.C., (hereinafter referred to as Robertson, Molloy), was hired by Henry Schroeder to represent Great Frontier. Mr. Hudgins negotiated with Lomas & Nettleton on behalf of Great Frontier regarding the project's financial difficulties and assisted Mr. Schroeder in efforts to secure additional financing for Great Frontier from other sources. In early February, 1974, Lomas & Nettleton advised Great Frontier that it would not lend it additional monies to complete the development of Rolling Hills unless Sundt agreed to resubordinate its first mortgage on the property to the extent of a proposed additional loan in the sum of $150,000.

Robertson, Molloy had been general counsel to Sundt for a number of years. However, it is Mr. Schroeder's position that he first learned that the law firm represented Sundt when it became necessary to seek Sundt's consent to subordinate. Mr. Hudgins asserts that although he knew Sundt was a major client, he first learned that Sundt had an interest in Great Frontier's property when Lomas & Nettleton requested that Great Frontier seek Sundt's consent to subordinate. As a result of the direct conflict which had now arisen between the interests of two of the firm's clients, Mr. Hudgins advised Mr. Schroeder that he must obtain new counsel. However, as time was of the essence in obtaining construction monies, Mr. Schroeder requested that the attorneys who represented Sundt approach their client with his request for subordination of its mortgage interest. This was done but Sundt refused Great Frontier's request. In March, 1974, Mr. Hudgins told Mr. Schroeder that the firm could no longer represent Great Frontier and surrendered the corporation's files to him. Approximately three days later attorney Donald Schroeder was retained as Great Frontier's new counsel. Thereafter,

Attorney Schroeder was successful in obtaining Sundt's consent to subordinate to the additional loan. In May, 1974, Great Frontier executed a third loan agreement with Lomas & Nettleton and a "Reinstatement and Modification Agreement"; and appellants executed a new guaranty agreement.

When Great Frontier began experiencing financial difficulties in the fall of 1973, liens were filed against the Rolling Hills Vista property by materialmen and subcontractors who were not being timely paid. In late 1973 and early 1974 a number of lawsuits were filed against Great Frontier upon these delinquent accounts. Mr. Hudgins agreed to accept service of process in these lawsuits and he contacted adversary counsel in a number of these matters seeking their clients' forbearance in anticipation of new financing for the project. Hudgins also filed answers in several of the lawsuits but judgments by default were taken in a number of others. When Donald Schroeder became counsel to Great Frontier, he negotiated with the various creditors and ultimately arranged for the satisfaction of all of the liens and judgments out of the proceeds of the new loan.

In June 1974, Lomas & Nettleton declared the Great Frontier loans in default, asserting that appellant Henry Schroeder had misrepresented the "work in place" at Rolling Hills Vista in seeking to draw upon his credit line with Lomas & Nettleton. The project failed; Great Frontier filed for bankruptcy on December 3, 1974. Lomas & Nettleton foreclosed on its Deed of Trust and successfully sued appellants upon their personal guarantees for the balance of the indebtedness.

The complaint in this action was filed on April 1, 1976, on behalf of appellants individually. In November 1978, attorney Schroeder purchased "any and all" of Great Frontier's causes of action from the trustee in bankruptcy and then assigned these claims to appellants.

Appellants first contend that the trial court erred in ruling that they had failed to state a legally sufficient cause of action.

They assert their entitlement to bring suit in their individual capacities both as assignees of Great Frontier's claims and as guarantors who have been held individually responsible upon the corporation's defaulted loans. They also assert an individual right of action based upon appellees' legal representation of them individually.

■ Generally, even where all of the stock in a corporation is owned by a sole shareholder, he may not maintain an action individually for wrongs against the corporation. *Funk v. Spalding*, 74 Ariz. 219, 246 P.2d 184 (1952); *Hidalgo v. McCauley*, 50 Ariz. 178, 183, 70 P.2d 443, 454 (1937); *Arctic Contractors, Inc. v. State*, Alaska, 573 P.2d 1385 (1978). To obtain a personal right of action, there must be relations between the individual and the tortfeasor "independent of those which the shareholder derives through his interest in the corporate assets and business." *Hidalgo v. McCauley*, 50 Ariz. at 184, 70 P.2d 443; *Green v. Victor Talking Machine Co.*, 24 F.2d 378, 381 (2d Cir.1928) *cert. denied* 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530.

■ Furthermore, while a guarantor who has paid upon his principal's debt is entitled to reimbursement and has an immediate right of action against the principal, *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 180, 118 P.2d 454, 455 (1941), in litigation with *third* parties, a guarantor may only defend to the extent of his liability for claims against his principal. "[A]ffirmative recovery by the guarantor would exceed the scope of the surety relationship and ... usurp claims belonging only to the principal." *Arctic Contractors, Inc. v. State*, 573 P.2d at 1387, Note 5. Thus, the trial court correctly found that the appellants' claim upon their personal guarantees was against their principal, Great Frontier, and that recovery thereupon is now barred for failure to file the same in bankruptcy court.

■ Appellants' reliance upon the assignment to them of Great Frontier's claims as a basis for this action is also misplaced. Section 70 of the Bankruptcy

Act, applicable in the instant matter, provides in pertinent part:

> **Title to property.** The trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this [act] * * * to all of the following kinds of property wherever located * * * (5) property, including *rights of action, which* prior to the filing of the petition *he could* by any means *have transferred* or which might have been levied upon and sold under judicial process against him or otherwise seized, impounded or sequestered; *Provided,* That rights of action *ex delicto* for libel, slander, *injuries to the person of the bankrupt* or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee *unless by the law of the State* such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process * *

11 U.S.C. § 110(a)(5) (1964). (Emphasis added).

Thus, the determination of whether the ownership of a cause of action is transferrable and rests in the trustee in bankruptcy must be made in accordance with state law. *Arnold v. Phillips,* 117 F.2d 497, 500 (5th Cir.1941).

In Arizona, actions for legal malpractice are tort claims subject to the two year statute of limitations for personal injuries *Long v. Buckley,* 129 Ariz. 141, 143, 629 P.2d 557 (App.1981), and actions for personal injuries are not assignable. *Employers Casualty Co. v. Moore,* 60 Ariz. 544, 142 P.2d 414 (1943). The reasoning of the courts of other jurisdictions in concluding that actions for legal malpractice are not assignable is also instructive.

In *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976), the California Court of Appeals held that the gravamen of an action for legal malpractice is the negligent failure to utilize such skill, prudence and diligence as lawyers of ordinary skill and knowledge commonly possess. Such a claim gives rise to an action in tort and is, thus, not assignable. The court went on to point out that the relationship between attorney and client is of a uniquely personal nature, giving rise to a "fiduciary relation of the very highest character" and that considerations of public policy require that actions arising out of such a relationship not be relegated to the market place and converted to a commodity to be exploited and transferred to economic bidders. 133 Cal.Rptr. at 86–87.

In *Christison v. Jones,* 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8 (1980), the trustee in bankruptcy took the position that he was the owner of any cause of action which the bankrupt might have against the attorney who had represented the bankrupt in an action wherein judgment had been entered against him. The court, holding that such a cause of action was not assignable, reasoned that while an action for legal malpractice is primarily a tort action for negligence, its "real substance ... is a client's claim that his attorney has breached his personal duty and trust ... by failing to exercise the requisite degree of care and skill or by failing to give the utmost loyalty and fidelity to the client's interests." 405 N.E.2d at 11. Finding that it "cannot be seriously concluded" that such an action is for injuries to the person of the bankrupt within the meaning of subsection 70(a)(5) of the Bankruptcy Act, the court, citing *Goodley v. Wank & Wank, Inc.* with approval, determined that:

> With its unique aspects, the tort of legal malpractice does not fit well into categories previously established for determining assignability. It has aspects of the tort to property, inasmuch as the injuries resulting are to property interests, and it has highly personal aspects without being a personal injury tort. We find that the personal nature of the relationship and the duty imposed upon the attorney, coupled with public policy considerations surrounding that relationship and any potential assignability of breaches thereof (giving rise to causes of action in legal malpractice) lead us to conclude

that the legal malpractice claim is not subject to assignment.

39 Ill.Dec. at 563, 405 N.E.2d at 11.

Appellants also assert that they have an individual right of action as appellees provided legal representation to them personally as well as to Great Frontier. While the law firm has stated in a response to requests for admission that it represented Henry Schroeder, Attorney Hudgins, who undisputedly provided all of the legal services undertaken at the request of Schroeder, has asserted consistently and unequivocally that he was hired to represent Great Frontier only. It is Hudgins' position that the sole actions taken by him on behalf of appellants individually consisted of the acceptance of service of process in some lawsuits against Great Frontier in which Henry Schroeder was named individually as a defendant and the referral of Henry Schroeder to appropriate legal counsel when he was faced with criminal charges. Mr. Schroeder's sole allegation that appellees committed legal malpractice in providing legal services to him consists of an unsupported assertion that appellees wrongfully allowed creditors to obtain default judgments against him individually. When pressed for details during pretrial discovery, he was unable to provide the specifics with regard to even one matter in which this had allegedly occurred.

 "[T]he opponent of a motion for summary judgment does not raise an issue of fact by merely stating in the record that an issue of fact exists, but rather he must show that competent evidence is available which will justify a trial ..." *Cullison v. City of Peoria,* 120 Ariz. 165, 168, 584 P.2d 1156 (1978). Where the facts appropriately set forth in support of the motion are not controverted by the adverse party with proof of specific evidence admissible upon trial, they are presumed to be true, for while the burden is on the movant the opposing party cannot fail to urge his argument. *Portonova v. Wilkinson,* 128 Ariz. 501, 502, 627 P.2d 232 (1981); *W.J. Kroeger Co. v. Travelers Indemnity Company,* 112 Ariz. 285, 286, 541 P.2d 385 (1975). Hud-

gins' statements that he did not serve as counsel to appellants stand unrefuted. Mr. Schroeder's assertions that Hudgins undertook his legal representation and then allowed default judgments to be entered against him personally are not supported by specific facts sufficient to raise a triable issue. Thus, an action by appellants based upon an independent relationship between the parties cannot be sustained. Our courts have refused to uphold a claim for attorney malpractice when the claimant is neither a client nor in privity with the attorney. *Chalpin v. Brennan,* 114 Ariz. 124, 126, 559 P.2d 680 (App.1976).

Since, for all of the foregoing reasons, we conclude that appellants are precluded from maintaining this action we find that it is unnecessary to consider the issues raised regarding judicial estoppel and the statute of limitations.

The judgment of the trial court is affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.