NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HARESH MIRCHANDANI, *Plaintiff/Appellant*,

*v.*

BMO HARRIS BANK, N.A., successor to M&I Marshall and Ilsley Bank, a
chartered banking institution; and TradeCor Desert Sky II, LLC,
*Defendant/Appellee.*

No. 1 CA-CV 15-0368
FILED 12-20-2016

Appeal from the Superior Court in Maricopa County
No. CV2011-099950
The Honorable David King Udall, Judge

**AFFIRMED IN PART, APPEAL DISMISSED IN PART**

COUNSEL

Haresh Mirchandani, San Diego, CA
*Plaintiff/Appellant*

Stinson Leonard Street LLP, Phoenix
By Stefan Palys, Jeffrey J. Goulder
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R**, Judge:

¶1   Appellant Haresh Mirchandani ("Mirchandani"), appearing in propria persona, appeals the superior court's dismissal of his and his wife's complaint against BMO Harris Bank, N.A. ("BMO"). Mirchandani also appeals the award of attorneys' fees to BMO and the denial of his motion for relief from the judgment. For the reasons stated below, we affirm the superior court's rulings against Mirchandani and dismiss the appeal as to his wife.

### FACTUAL AND PROCEDURAL HISTORY[1]

¶2   Mirchandani and his wife, Indra, (collectively "the Mirchandanis") were the sole members of SS Quality Fuels LLC ("Quality"). Quality owned a gas station operated by the Mirchandanis. In

---

[1]   Because the complaint was dismissed at the pleading stage, we review the well-pleaded facts alleged in the complaint as true. *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005) (citation omitted). "However, we do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Id.* (citations omitted). A complaint's exhibits, or public records regarding matters referenced in a complaint, are not "outside the pleading," and courts may consider such documents. *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 63, ¶ 10, 64, ¶ 13 (App. 2010) (citations omitted). Accordingly, we view the allegations in the complaint in light of those exhibits and public records.

2007, Quality entered into a swap loan agreement[2] with BMO Harris Bank, N.A.[3] Quality subsequently entered into two additional loans with BMO.[4] The Mirchandanis were signatories as the managing members of Quality. Additionally, the Mirchandanis guaranteed the loans. In 2009, Quality defaulted on the loans. In 2010, BMO sold the loans, which were still in default, to TradeCor Desert Sky II, LLC ("TradeCor").

¶3        TradeCor noticed a trustee's sale against Quality in May 2010. Quality then filed for bankruptcy and obtained an automatic stay of the trustee's sale. On November 7, 2011 the bankruptcy court lifted the stay, allowing TradeCor to move forward with the trustee sale.

¶4        In the course of that proceeding, TradeCor sued the Mirchandanis as guarantors for repayment of the loan they guaranteed (hereinafter "the prior litigation"). The Mirchandanis responded by raising affirmative defenses within their answer but did not file any counterclaims against TradeCor. Ultimately, summary judgment was entered against the Mirchandanis on January 20, 2011.

¶5        In November 2011, after the bankruptcy court lifted the stay, the Mirchandanis filed this complaint against both BMO and TradeCor.[5] The Mirchandanis alleged that in making the loans, BMO had breached its duty of good faith and fair dealing; was liable to them based on theories of promissory estoppel, negligent misrepresentation, fraud, schemes and artifices to defraud and securities violations under the Arizona racketeering

---

[2]        A swap loan can be used to convert floating rate loans to a fixed rate or vice-versa. According to the complaint, Quality entered into the loan agreement as a means to change the loan from a variable interest rate loan to a fixed interest rate loan.

[3]        The loan was actually entered into with BMO's predecessor-in-interest, M&I Marshall and Ilsley Bank. We refer to both as BMO for ease and clarity.

[4]        The complaint lists these loans as "bridge loans." The loans were entered into on December 23, 2008, and March 22, 2009.

[5]        Additionally, Quality filed almost identical claims against BMO and TradeCor in bankruptcy court. That case was ultimately dismissed with prejudice.

act, (Arizona Revised Statutes ("A.R.S.") § 13-2314.04(A) and (D) (2003));[6] and that both BMO and TradeCor were liable to them for conspiracy to deprive them of their ownership of the property under A.R.S. § 33-420 (1994). They also sought to enjoin TradeCor's proposed trustee's sale of the property.[7] Additionally, the Mirchandanis filed an emergency motion for a temporary restraining order ("TRO") as to the sale. BMO filed a notice of removal based on federal question jurisdiction and diversity of citizenship. The United States District Court denied the Mirchandanis' TRO because Quality and not the Mirchandanis owned the property and thus the Mirchandanis could not show they would suffer personal irreparable harm from the sale. The federal court later granted the Mirchandanis' motion to remand the case back to the superior court for lack of subject matter jurisdiction in the federal court.

¶6         TradeCor and BMO moved to dismiss the complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6) and 13(a), arguing, in part, that the claims arose out of the same loan transactions in the prior litigation or amounted to counterclaims which should have been raised in the prior litigation and thus were barred by res judicata or collateral estoppel. The superior court dismissed the complaint based on res judicata. Mirchandanis appealed and this Court affirmed the dismissal as to TradeCor, but reversed the judgment as to BMO. As part of that decision, we explained that while a judgment can be affirmed on other grounds than those found by the superior court, we were reluctant to rule on an issue the superior court had not reached. *Mirchandani v. BMO Harris Bank, N.A.*, 235 Ariz. 68, 72, ¶ 15 (App. 2014) (citations omitted).

¶7         On remand, BMO again moved to dismiss and also raised for the first time the issue of standing. Following a full briefing and oral argument, the court dismissed the complaint with prejudice for lack of standing, ruling that the claims belonged to Quality. Mirchandani appealed. After Mirchandani filed the notice of appeal, the Mirchandanis filed a motion pursuant to Rule 60, claiming the trial court judge was biased. The minute entries denying the Rule 60 motion were not signed and thus not appealable and the Mirchandanis did not file a notice of appeal from such orders. We therefore stayed this appeal, to allow the superior court to enter signed order(s) conforming to the orders denying the Rule 60

---

[6]       We cite to the current version of statutes unless changes material to this decision have occurred.

[7]       Both parties acknowledge that the claim to enjoin the trustee's sale is now moot as the sale was complete on December 12, 2011.

motion and to allow the Mirchandanis to file a timely supplemental notice of appeal to include that order. The superior court ultimately entered a signed order and Mirchandani timely appealed from it.

## DISCUSSION

I.     Jurisdiction

**¶8**          This Court has an independent obligation to review its jurisdiction. *Robinson v. Kay*, 225 Ariz. 191, 192, ¶ 4 (App. 2010) (citations omitted). BMO argues this Court lacks jurisdiction over the appeal from the original judgment due to Mirchandani's original notice of appeal being untimely. This Court initially dismissed the appeal for lack of jurisdiction, finding the notice of appeal untimely. However, on a motion to reconsider, a motions panel of this Court found the appeal timely. We agree that appeal was timely.

**¶9**          The original signed judgment dismissing the complaint was filed April 3, 2015. However, Mirchandani had, prior to April 3, 2015, filed a motion to clarify the court's earlier but unsigned decision and on April 8, 2015, the court filed a signed minute entry denying the motion to clarify. Mirchandani filed his notice of appeal on May 7, 2015, which was within thirty days of the April 8 minute entry but more than thirty days from the April 3 judgment. The motions panel held that because the trial court expressly ruled on a motion to clarify in the April 8 minute entry, that particular motion was not implicitly denied in the April 3 judgment. Additionally, we find the trial court's April 3 order holding that BMO "need not respond to the Mirchandanis' filings unless ordered to do so," indicated that the April 3 judgment was not the trial court's final ruling. Had it been, the trial court would not have needed to issue the order excusing BMO from responding, as the matter would have already been fully plead. As such, the April 8, 2015 minute entry was the final judgment, and Mirchandani's May 7, 2015 notice of appeal was timely. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (2016).

**¶10**          We also have jurisdiction over the appeal from the order denying the Rule 60 motion. Signed orders denying Rule 60 motions are appealable pursuant to A.R.S. § 12-2101(A)(5)(a). *See Johnson v. Nelson*, 128 Ariz. 587, 588 (App. 1981) (discussing a previous version of the statute). The signed order was filed October 27, 2016 and Mirchandani amended his notice of appeal on October 27, 2016, less than 30 days from the entry of the order.

¶11            However, we lack jurisdiction over any appeal purportedly brought by or on behalf of Indra Mirchandani. Mirchandani signed the notices of appeal for both himself and his wife, Indra, and signed the opening brief for himself only.  Indra did not sign the notices of appeal nor file an opening brief in this matter.  Accordingly, to the extent Mirchandani seeks to reverse the judgment and orders against his wife, we dismiss the appeal as to his wife.  *State v. One Single Family Residence at 1810 E. Second Ave., Flagstaff, Ariz.*, 193 Ariz. 1, 2 n.1 (App. 1997) (finding that where only the husband signed the notice of appeal, and he was not an attorney, he could not represent his wife in court and the notice of appeal was invalid as to her); *Haberkorn v. Sears, Roebuck & Co.*, 5 Ariz. App. 397, 399 (1967) (holding that a husband who is not a member of the bar may not represent his wife in a court of law.  "This is true whether her interest be separate or community.").

II.     Standing

¶12            We review a superior court's grant of a motion to dismiss for lack of standing de novo.  *See Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15 (App. 2004) (citation omitted).  The appellate court will affirm a judgment of dismissal only if, assuming the truth of all material facts alleged by the plaintiffs, they would not be entitled to relief under any facts susceptible of proof under the claims stated.  *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 218 Ariz. 293, 294, ¶ 2 (App. 2008) (citation omitted).

¶13            To have standing to sue, a plaintiff must show a "particularized injury to themselves."  *Bennett v. Brownlow*, 211 Ariz. 193, 196, ¶ 17 (2005) (citations omitted).  Additionally, the injury must be distinct and palpable so that the plaintiff has a personal stake in the outcome.  *See Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140, ¶ 6 (2005) (citation omitted).

¶14            Mirchandani argues that he has a direct stake in the outcome of the litigation because he personally guaranteed the loans and because Quality was a "closely held LLC."  However, although a guarantor who has paid upon his principal's debt has an immediate right of action against the principal, affirmative recovery by the guarantor against a third party would exceed the scope of the surety relationship and "usurp claims belonging only to the principal."  *Schroeder v. Hudgins*, 142 Ariz. 395, 398 (App. 1984), (citations and quotations omitted) (*abrogation on other grounds recognized by Franko v. Mitchell*, 158 Ariz. 391, 400 n.1 (App. 1988)).  In *Schroeder*, we held that a sole shareholder and guarantor of an LLC lacked standing to sue the

LLC's former attorney for malpractice. *Id.* at 400. The issue arose after the LLC's loans went into default and the LLC was foreclosed on and the guarantors were sued for repayment of the loan they guaranteed. *Id.* at 397. As we stated, "[g]enerally, even where all of the stock in a corporation is owned by a sole shareholder, he may not maintain an action individually for wrongs against the corporation." *Id.* at 398; *see Hidalgo v. McCauley*, 50 Ariz. 178, 183 (1937).

¶15 The holding in *Schroeder* is not completely analogous to the facts here because it deals with a guarantor and LLC member suing the LLC's counsel and not a lender. However, the basic holding is consistent with cases in other jurisdictions that hold that a guarantor or sole shareholder of a corporation lacks standing to sue lenders based on alleged fraud or misrepresentations on loans made to the corporation. In *Park Bank v. Westburg*, 832 N.W.2d 539 (Wis. 2013), the Westburgs, a married couple, started a woodworking business and created an LLC in which they were the sole shareholders. The LLC defaulted on loans and the bank brought actions against the LLC for the breach and against the Westburgs on their guaranty. *Id.* at 542-44, ¶¶ 6-13 & 22-24. The Westburgs counterclaimed against the bank alleging breach of the duty of good faith and fair dealing. *Id.* at 544, ¶ 25. The court in *Park Bank* found that "where an individual's injury results from the corporation's injury, the resulting claim is derivative and the individual lacks standing to raise it in a direct action." *Id* at 548, ¶ 43 (citation omitted). The court also explained that to assert a direct claim, the guarantors would have to show that the "injury [is] independent of the firm's fate" and concluded that the Westburgs' claims were not direct because they were secondary to that of the LLC. *Id.* at 549-50, ¶¶ 48-53 (citation and quotation omitted); *see Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chi.*, 877 F.2d 1333, 1336 (7th Cir. 1989) ("Guarantors must be treated as creditors. When they suffer direct injury-injury independent of the firm's fate—they may pursue their own remedies. Those whose injury is derivative must take their place in line"); *see also* 13 Fletchers Cyclopedia of the Law of Corporations § 5972.25 (Supp. 2016) ("[G]uarantors are treated no differently from creditors in determining whether a guarantor may bring a derivative action. Thus, generally, guarantors may not maintain a derivative proceeding.").

¶16 Mirchandani argues that the superior court erred in applying the holding in *Hidalgo* stating that other cases "undermine the ruling that the claims were derivative." *See Hidalgo*, 50 Ariz. at 183. Mirchandani cites several cases that allowed shareholders to maintain individual actions. However, in each of those cases only the shareholder suffered legal injury, not the corporation. *See, e.g.*, *Funk v. Spalding*, 74 Ariz. 219, 224 (1952)

(finding that the corporation did not suffer an injury); *Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 52, ¶ 18 (App. 2001) (citations omitted) (finding an exception exists where "the injuries or damages were sustained by individual shareholders rather than by the corporation."). Additionally, in each of those cases, the shareholder was suing another shareholder or member of the corporation, not a third party.

¶17        Mirchandani also argues that he suffered direct injuries such as the personal default judgment of $2.2 million obtained by TradeCor against him and his wife based on the guaranty, the resulting foreclosure of his home, credit score reduction, adverse effects on employment, lost income, and the lost option to purchase the Quality business. However, these injuries alleged by Mirchandani are not directly related to the actions of BMO but are a secondary effect of the breach by Quality of BMO's contracts and loans with Quality which Mirchandani guaranteed. They thus, "derive" from claims Quality might seek to bring against BMO rather than being attributable to conduct of BMO directed against Mirchandani. As the court in *Mid-State* explained:

> "Corporation" is but a collective noun for real people—
> investors, employees, suppliers with contract rights, and
> others. A blow that costs "the firm" $100 injures one or more
> of those persons. If, however, we allow the corporation to
> litigate in its own name and collect the whole sum (as we do),
> we must exclude attempts by the participants in the venture
> to recover for their individual injuries.

*Mid-State*, 877 F.2d at 1335-36. Mirchandani's claims are derivative. Mirchandani's claims against BMO, based on the documents the superior court properly relied on, alleged wrongs done to Quality and therefore the claims belong to Quality. Because Quality could have sued on the claims alleged in the complaint, Mirchandani is excluded from recovering for his alleged individual injuries which derive from the alleged injuries to Quality. We therefore affirm the court's motion to dismiss for lack of standing.

III.    Judicial Bias

¶18        Mirchandani moved for relief from judgment, arguing that the superior court judge who had dismissed the action was biased. The court treated this as a motion to remove a judge for cause, assigned the motion to another judge to be heard, and that judge heard and then denied the motion. We review the denial of a motion for change of judge based on

alleged bias for an abuse of discretion. *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568, ¶ 21 (App. 2013) (citations omitted). We presume trial judges are free of bias and prejudice. *Id.* (citation omitted).

¶19 Mirchandani argues the superior court judge should have recused himself on three grounds: (1) BMO made a political donation to the judge's cousin's political campaign in Colorado; (2) BMO has made donations to the Maricopa County Bar Association; and (3) the judge had attended seminars that BMO personnel also attended.

¶20 The only evidence Mirchandani provided of the alleged bias was the judge's rulings. Judicial rulings alone, however, "do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism." *Id.* (citations omitted). "A change of judge for cause is not warranted if based merely on speculation, suspicion, apprehension, or imagination." *Id.* (citation and quotations omitted). Based on the evidence presented, the court did not abuse its discretion in denying Mirchandani's motion for change of judge. As such, we affirm the denial of the motion for relief from judgment.

IV.     Attorneys' Fees

¶21 We review de novo the superior court's determination that A.R.S. § 12-341.01 (2013) authorizes an attorneys' fees award. *Hanley v. Pearson*, 204 Ariz. 147, 149, ¶ 5 (App. 2003) (citation omitted). If authorization is found, we then review the trial court's awarded amount of attorneys' fees for an abuse of discretion. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006) (citation omitted). An award of attorneys' fees will be found to be an abuse of discretion only if there is "no evidence to support the superior court's conclusion or the reasons given by the court [are] clearly untenable, legally incorrect, or amount to a denial of justice." *Id.* (quotations and citations omitted). Alternatively, an abuse of discretion may be found if the trial court, in its discretion, commits an error of law. *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23 (App. 2004) (citation omitted).

¶22 On appeal, Mirchandani raises two cognizable arguments that the superior court erred in awarding fees: that the complaint did not

arise out of contract for purposes of an award of attorneys' fees and that the fee request consisted of block billing.[8] We disagree with both arguments.

**¶23** Pursuant to A.R.S. § 12-341.01(A), a prevailing party may be awarded reasonable attorneys' fees from a claim arising out of a contract. A.R.S. § 12-341.01's reference to "aris[ing] out of contract" should be construed broadly. *ML Servicing Co. v. Coles*, 235 Ariz. 562, 570, ¶ 30 (App. 2014) (citation omitted). This includes actions where contract claims are interwoven with tort claims. *Id.* (citations omitted); *see Zeagler v. Buckley*, 223 Ariz. 37, 39, ¶ 7 (App. 2009) (citations omitted) ("[W]hen two claims are so intertwined as to be indistinguishable, a court has discretion to award attorney fees under § 12-341.01 even though the fees attributable to one of the causes of action would not be recoverable under this statute."); *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (App. 1994) (citation omitted) (finding trial courts have "significant discretion to award fees in a matter intertwined with another matter for which it may not grant attorneys' fees."). Additionally, loan agreements have been found to constitute contracts for the purposes of A.R.S. § 12-341.01(A). *See, e.g., Sw. Savings & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 563 (App. 1992); *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 482, ¶ 44 (App. 2015) (awarding prevailing party attorneys' fees under A.R.S. § 12-341.01(A) based on issues arising from a loan agreement). Because the current dispute is based on claims arising from the default of a loan contract, the court properly applied A.R.S. § 12-341.01(A).

**¶24** Nor did the superior court abuse its discretion by awarding BMO $56,751.79 in attorneys' fees. To determine whether a party's requested attorneys' fees are reasonable, courts consider the attorneys' hourly rates and the amount of time spent on each task. *Schweiger v. China Doll Rest. Inc.*, 138 Ariz. 183, 187-88 (App. 1983). Thus, if the attorneys' hourly rates and the time spent on each task were reasonable, then the fees themselves will be reasonable. *Id.* Once the party requesting fees "makes a prima facie case that the fees are reasonable, the burden shifts to the party

---

[8] Mirchandani also argues that the fee award should be reversed because the matter has not been finally resolved and he might obtain a reversal, that the alleged torts of BMO caused him extreme hardship and that a large fee award would discourage others from pursuing legitimate claims. The first argument fails because we are, herein, affirming the judgment. The second fails because it is based on a summary affidavit about the lack of resources available to Mirchandani, not taking into account any limitations on garnishment or attachment of his allegedly limited assets. The third argument fails because it is speculative.

opposing the fee request to establish that the amount requested is clearly excessive." *Geller v. Lesk*, 230 Ariz. 624, 628, ¶ 11 (App. 2012), *as amended* (Sept. 26, 2012).

**¶25**        Here, the award of attorneys' fees was reasonable. BMO provided evidence of its attorneys' hourly rates and recorded, in detail, the time spent preparing the case, avoiding block billing by breaking down work spent on different aspects of the case by time. *Hawk v. PC Vill. Ass'n, Inc.*, 233 Ariz. 94, 100, ¶ 23 (App. 2013) (citation and quotation omitted) (finding that requests for fees contain sufficient information if they "indicate the type of legal service provided, the date the service was provided, the attorney providing the service, . . . and the time spent in providing the service."). Although Mirchandani argued below and on appeal that the fees were improperly awarded because they contained vague descriptions and lump sums, this statement is contradicted by the fee application itself. Thus, we cannot say the superior court abused its discretion in awarding fees, and we affirm the award.

## CONCLUSION

**¶26**        For the foregoing reasons, we affirm the superior court's judgment dismissing the complaint for lack of standing, the order denying the Rule 60 motion, and the award of attorneys' fees. We deny Mirchandani's request for attorneys' fees on appeal both because he appeared pro per, *Connor v. Cal-Az Props., Inc.*, 137 Ariz. 53, 56 (App. 1983), and because he has not prevailed on appeal. Additionally, we grant BMO's request for attorneys' fees and costs incurred on appeal upon timely compliance pursuant to Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA