[Civil No. 2852.   Filed July 19, 1930.]

[290 Pac. 155.]

ALBERT STEINFELD, Appellant, v. COPPER STATE MINING COMPANY, a Corporation, CALUMET AND COPPER CREEK MINING COMPANY, a Corporation, MINNESOTA–ARIZONA COPPER COMPANY, a Corporation, MARTIN E. TEW, JOHN F. SHAW and GALESBURG COPPER COMPANY, a Corporation, Appellees.

Mr. Francis M. Hartman, for Appellant.

Mr. John B. Wright, for Appellees.

LAMSON, Superior Judge.—This is a suit in equity instituted by Albert Steinfeld, as plaintiff, against the Copper State Mining Company, a corporation; Calumet and Copper Creek Mining Company, a corporation; Minnesota-Arizona Copper Company, a corporation; Martin F. Tew; John F. Shaw; and Galesburg Copper Company, a corporation, defendants, to quiet title to, or for an interest in, or for a lien upon, all or portions of certain unpatented mining claims, situated in Pinal county, Arizona, known as Kimbro Eastern, Valesquez, Valesquez Wedge and Granite Hill mining claims, together with all buildings, mills, power plant and improvements of every kind situated thereon. Subsequently the Minnesota-Arizona Copper Company brought an action against John F. Shaw and Galesburg Copper Company to quiet title in the same mining claims and improvements, in which case Albert Steinfeld intervened. By stipulation the two cases were consolidated for trial. The cases were tried to a jury, and at the close of all the evidence the court directed a verdict in favor of Minnesota-Arizona Copper Company and against Shaw and Galesburg Copper Company without prejudice to the rights of Albert Steinfeld, and judgment was entered in accordance with the directed verdict. At the same time the issues between Albert Steinfeld on the one side and Copper State Mining Company, Calumet & Copper Creek Mining Company and Minnesota-Arizona Copper Company were withdrawn from the jury and submitted to the court for decision. Thereupon both sides submitted proposed findings of fact which were modified, amended, corrected and agreed upon by counsel for the respective parties, and then signed by the court. Thereafter the court announced its

decision in favor of the Minnesota-Arizona Copper Company and against the plaintiff, Steinfeld, and a formal judgment followed. It appears from the judgment that the action was dismissed as against the Copper State Mining Company, Calumet & Copper Creek Mining Company and Tew, without costs, for the reason that the evidence failed to show that such defendants or any of them ever did have any right, title or interest in the Kimbro group of mining claims. The plaintiff filed a motion for new trial, also amended motion for new trial, and various exceptions and objections to the proposed findings of fact. Thereafter the amended motion for new trial was denied and appeal duly taken to this court from the judgment and order denying motion for new trial.

It appears to be necessary to state rather fully the facts as they appear from the findings of the court below, and the evidence introduced. There are four Arizona corporations involved: Copper Creek Mining Company, incorporated June 18, 1903; Minnesota-Arizona Copper Company, incorporated April 17, 1908; Calumet & Copper Creek Mining Company, incorporated March 23, 1910; and Copper State Mining Company, incorporated August 5, 1915.

The Copper Creek Mining Company had many stockholders and owned numerous mining claims. The Minnesota-Arizona Copper Company had many stockholders and owned the Kimbro group and other claims. The Calumet & Copper Creek Mining Company owned two groups of mining claims, and also obtained by exchange of stock the controlling interest in the Copper Creek Mining Company and the Minnesota-Arizona Copper Company, holding 1,650,-000 shares of stock in the Copper Creek Mining Company, and 1,700,000 shares of stock in the Minnesota-

Arizona Copper Company. In 1909 the Minnesota-Arizona Copper Company leased to the Copper Creek Mining Company a portion of the surface of the Kimbro and Kimbro Eastern mining claims for a period of twenty-five years, for the purpose of the erection and maintenance of a concentrating mill and other machinery thereon, and thereafter the Copper Creek Mining Company erected a mill on the leased ground.

In 1914, one Leo Goldschmidt obtained a judgment against the Calumet & Copper Creek Mining Company for approximately $9,000, which judgment was docketed in Pinal county November 16th, 1914. On June 2, 1915, the Calumet & Copper Creek Mining Company was adjudicated a bankrupt. This adjudication did not affect the lien of the Goldschmidt judgment.

Defendant Tew was a stockholder in the Minnesota-Arizona Copper Company and became vice-president some time after its incorporation. He was also a stockholder in the Calumet & Copper Creek Mining Company and became president a few months before the adjudication in bankruptcy. He was also a stockholder in the Copper State Mining Company and president in charge of the affairs of that company. At the time of the docketing of the Gold-schmidt judgment, and at the time of the adjudication in bankruptcy, the Calumet & Copper Creek Mining Company owned a number of mining claims, 1,650,000 shares of stock in the Copper Creek Mining Company, valued in the schedules at $240,000, and 1,700,-000 shares of stock in the Minnesota-Arizona Copper Company, valued in the schedules at $170,000. The bankrupt also listed the permanent improvements on the leased portion of the Kimbro group as personal property. These improvements were held by the court to be real estate, and admitted by all of

the parties to this litigation as such. At the time of the docketing of the Goldschmidt judgment the improvements consisted chiefly of the old mill erected by the Copper Creek Mining Company. It does not appear just what improvements were made by the Calumet & Copper Creek Company.

Some of the stockholders of the bankrupt company raised the sum of $10,000, and placed the same in the hands of one Hudson, who purchased all the assets of the bankrupt at the trustee's sale. In the deed from the trustee to Hudson, the mining claims owned by the bankrupt company were specifically named, and the shares of stock in the Copper Creek Mining Company and Minnesota-Arizona Copper Company were included. The deed also conveyed all right, title and interest which the bankrupt had by virtue of its ownership of the 1,700,000 shares of stock in and to the Kimbro group *belonging* to the Minnesota-Arizona Copper Company. Thereafter the Copper State Mining Company was organized and Hudson conveyed to the new company, using the same language as contained in the trustee's deed to him. These conveyances were made subject to the lien of the Goldschmidt judgment. The stockholders of the bankrupt company who had contributed to the fund were given stock in the Copper State Mining Company in proportion to their contributions. The lower court expressly found that there was no fraud in connection with any of these transactions.

In the year 1916 the Copper State Mining Company erected on the Kimbro and Kimbro Eastern a flotation mill and other improvements of the value of approximately $150,000. These improvements were assessed to the Copper State Mining Company as personal property, and that company paid the taxes thereon each year thereafter. Neither the Minnesota-Arizona Copper Company nor Goldschmidt, nor any

of his successors, ever paid or tendered any taxes on these improvements. In October, 1919, Goldschmidt took out an execution, and the sheriff sold not only the claims belonging to the judgment debtor, Calumet & Copper Creek Mining Company, but also the Kimbro group. Goldschmidt himself became the purchaser at the sale and received the sheriff's certificate of sale. In November, 1919, Goldschmidt sold and assigned this certificate of sale to the Consolidated National Bank of Tucson. In February, 1922, said bank obtained from the sheriff of Pinal county a sheriff's deed, conveying all the right, title and interest of the Calumet & Copper Creek Mining Company, as the same existed in November, 1914, or thereafter, in the Kimbro group and the improvements thereon. In 1926 the bank conveyed the same property to the plaintiff herein.

It appears that the Minnesota-Arizona Copper Company held no formal meetings of stockholders or directors after 1910, but did hold informal meetings on several occasions; that the Minnesota-Arizona Copper Company performed, or caused to be performed, the assessment work on the Kimbro group each year from 1908 to the date of the trial. It further appears that in 1918 and 1919 claims for exemption from assessment work were filed on behalf of the Copper State Mining Company, in which claims the Kimbro group were stated to belong to said company. It further appears that defendant Tew in 1917 caused a prospectus to be printed in which he stated that the Copper State owned the Kimbro group, together with the improvements. No evidence was introduced to show whether or not said prospectus was ever distributed to anyone, or that Tew had any authority from the Minnesota-Arizona Copper Company to make such statement.

In June, 1923, the Copper State Company, by its president, Tew, made a written contract with the Consolidated National Bank, whereby the bank agreed to accept $12,000 in full payment of its judgments, amounting to about $44,000, under which certain claims of the Copper Creek Mining Company and Calumet & Copper Creek Mining Company had been sold to it, and to convey its interest in said claims to the Copper State Mining Company, provided Tew would pay certain notes owing by him individually to the Steinfeld Company.

Appellant in his briefs makes nine assignments of error. The first four assignments may properly be considered together, and in effect raise the question, as stated by appellant: "What interest in and to the Kimbro group and the improvements thereon, did plaintiff acquire under the Sheriff's deed?"

On November 16, 1914, the date of the docketing of the Goldschmidt judgment, the Calumet & Copper Creek Mining Company owned two groups of claims known as the Old Reliable and Stanley Butte groups. It also owned a majority of the outstanding stock in both the Copper Creek Mining Company and the Minnesota-Arizona Copper Company. The judgment, by its docketing, became a lien on all of the real property owned by the judgment debtor. No real property was acquired by the judgment debtor subsequent to the date of the docketing of the judgment. No attempt was made to levy on the stock owned in the Copper Creek Mining Company and Minnesota-Arizona Copper Company.

Plaintiff bases his right to recover upon the proposition that there was a merger between the Calumet & Copper Creek Mining Company on the one hand, and Copper Creek Mining Company and Minnesota-Arizona Copper Company on the other, by reason of the ownership of the controlling interest

in the stock of these companies and the identity of the parties in control. The findings of the lower court merely show a controlling interest, namely, 1,650,000 shares of the Copper Creek Mining Company, and 1,700,000 shares of the Minnesota-Arizona Copper Company. There is no evidence as to the amount of stock outstanding in the Copper Creek Mining Company which was not exchanged for stock in the Calumet & Copper Creek Mining Company. The evidence does show more than 250,000 shares of stock in the Minnesota-Arizona Copper Company outstanding in the hands of other stockholders.

Witness Tew testified that the Calumet & Copper Creek Mining Company succeeded to the rights of the Copper Creek Mining Company, and again that it absorbed the latter company. Tew was not an officer or director of the Copper Creek Mining Company, and that company is not a party to this litigation. We believe that all of the testimony of Tew shows that he merely meant to say that the Calumet & Copper Creek Company had obtained control of the capital stock of the Copper Creek Company. We do not believe that a corporation can be deprived of all of its assets when it is not a party to the litigation by the mere statement of a witness who was not in any way connected with such corporation. The testimony shows that the Calumet & Copper Creek Mining Company was intended to be an operating company and intended to operate everything that it had control of or owned. It undoubtedly exercised some control over the improvements on the leased ground, but this alone is not sufficient to show a merger.

The situation is complicated by the fact that all parties considered and treated the mill, machinery and all improvements placed on the leased premises as personal property. They were so listed in the

bankruptcy schedules and in the deeds from 'the trustees in bankruptcy to Hudson, and from Hudson to the Copper State Mining Company. At the trial all of the parties conceded, and the court found, that all these improvements were real estate. No attempt was made under the execution 'to levy on any personal property; in fact, the sheriff's deed recites that he could find no personal property. If the improvements were personal property, the plaintiff has no right, title or interest in them. In view of the fact that all parties in the court below conceded, and the court found, them to be real estate, we will so consider them. They are part of the Kimbro group, and belong to the Minnesota-Arizona Copper Company.

Merger is largely a question of intention, to a great extent depending on the circumstances surrounding each particular case. 14a Corpus Juris, p. 1054, § 3630.

In the bankruptcy schedules the stock in the Copper Creek Mining Company was valued at $240,000, and in the Minnesota-Arizona Copper Company $170,000. If there had been a merger and Calumet & Copper Creek Mining Company had acquired all of the assets of these corporations, clearly the stock would have been without value. The lower court found that the Minnesota-Arizona Copper Company performed or caused to be performed the necessary assessment work on the Kimbro group each year from 1908 to the date of the trial. Clearly, the officers of this company did not consider or intend its assets had been absorbed by the Calumet & Copper Creek Mining Company.

The language used in the conveyances from the trustee in bankruptcy to Hudson and from Hudson to the Copper State Mining Company also shows that the parties interested in these transactions did not

consider that the titles to the Kimbro group and the improvements had passed to the Calumet & Copper Creek Mining Company by merger of the corporations, or in any other way. The court below found that the Minnesota-Arizona Copper Company at the time of the judgment was the owner and entitled to the possession of the Kimbro group and the improvements, and that it had been since the year 1908 such owner and entitled to the possession of the property. It also found that the Minnesota-Arizona Copper Company from 1908 to the time of the trial had used its franchise continuously.

It appears in the evidence that from November, 1914, the date of the Goldschmidt judgment, to June, 1927, when this action was instituted, no claim of title was made by any person or corporation to the Kimbro group, based on said judgment or any proceedings thereunder. The Minnesota-Arizona Copper Company, according to the findings, was continuously in possession and performed the assessment work each year, and certain valuable improvements were placed upon the ground by the Copper State Company, which it is here conceded became a part of the realty. Neither the plaintiff nor any of his grantors ever paid or tendered any of the taxes on any of the property involved. Neither did the plaintiff or any of his grantors do or offer to do, or pay or tender any payment for any assessment work on the Kimbro group with the possible exception of the year 1923. It appears that neither the plaintiff nor his grantors claimed any interest in the Kimbro group by merger at any time from 1914 to June, 1927, when this suit was brought. On the contrary, the Minnesota-Arizona Copper Company was permitted to remain in possession and do the assessment work each year. Under all of the circumstances in this case, the lower court correctly found in effect that there had been no merger of the

Calumet & Copper Creek Mining Company and the Copper Creek Mining Company and Minnesota-Arizona Copper Company, and that the Calumet & Copper Creek Mining Company did not succeed to the assets and property of either of the other companies. It merely obtained a majority of the stock in each of the other companies. The assets of the Copper Creek Mining Company and Minnesota-Arizona Copper Company did not become subject to the lien of the Goldschmidt judgment.

A stockholder has no right, title or interest in the assets of a corporation. The property belongs to the corporation. Stockholders have merely the right to share in the profits through dividends, to vote on the choice of directors, and in the management of the corporation, and, upon dissolution or sale of its assets, to get their proportion of the proceeds after all debts have been paid. *Hook* v. *Hoffman,* 16 Ariz. 540, 147 Pac. 722.

The holder of the majority of the stock in a corporation owes to the other stockholders and the corporation the duty to exercise good faith, care and diligence, to conserve the property of the corporation, and to protect the interests of minority stockholders. Any act of his in dealing with the property of the corporation in violation of this duty for his own selfish interest and gain cannot be recognized. Majority stockholders can no more for their own benefit and advantage appropriate the property of the corporation than the minority stockholders, and, where the act is in itself a violation of the duty that arises from their fiduciary relations, the corporation can rescind that act. *Heffern Co-operative Co.* v. *Gauthier,* 22 Ariz. 70, 193 Pac. 1021.

The bankrupt, Calumet & Copper Creek Mining· Company, as the owner of the majority of the capital stock of the Copper Creek Mining Company and

Minnesota-Arizona Copper Company, was legally obliged to exercise good faith and diligence in preserving the property of these companies, and not to do anything to appropriate to itself the property of either of said companies.

A sheriff, on execution, can only sell the assets of the judgment debtor. He cannot sell the property of someone else to satisfy the title of the judgment debtor. If the sheriff attempts to do this, the sale is void, and the purchaser acquires no title to the property sold. *Costello* v. *Friedman,* 8 Ariz. 215, 71 Pac. 935.

We think there is ample evidence to support the findings of the lower court that the Calumet & Copper Creek Mining Company had no title, legal or equitable, in the Kimbro group, or in the improvements thereon, at the time of the levy of the execution, or thereafter, and, therefore the plaintiff acquired no title or interest in said group or the improvements by virtue of the sheriff's sale.

Plaintiff further argues that the merger was not effected by the bankrupt company, but by the Copper State Company which became the owner of the majority of the stock of the Copper Creek Mining Company and Minnesota-Arizona Copper Company, and that therefore the court should have impressed a lien on the Kimbro group or on the leased ground and improvements, or on the improvements, in the hands of the Copper State Company. The Copper State Mining Company only acquired the interest of the Calumet & Copper Creek Mining Company, as it existed at the date of the adjudication in bankruptcy.

The facts connected with the organization of the Copper State Mining Company as stated above are wholly insufficient to support plaintiff's contention that there was a merger. The fact that the Copper State Mining Company claims some interest or title

in the Kimbro group in affidavits of assessment work, or in circulars published by one of its officers, could not possibly give that company any title to the claims in question or the improvements, without some action on the part of the directors or stockholders of the Copper Creek Mining Company and the Minnesota-Arizona Copper Company. In any event, any interest so obtained would have been after-acquired property, and not in any way subject to the lien of the Goldschmidt judgment. Goldschmidt had no judgment or other lien against the Copper Creek Mining Company or the Minnesota-Arizona Copper Company. The Copper State Mining Company never assumed or in any way agreed to pay the debts of the bankrupt company and Copper Creek Mining Company.

Plaintiff suggests in his brief that he should have judgment for $12,000 against the Copper State Mining Company, although he does not pray for such a judgment in his complaint. This claim is based on the alleged contract between Consolidated National Bank and the Copper State Mining Company, dated June 25, 1923, which provided that said bank would accept $12,000 in full payment of judgments amounting to $44,000, if Tew individually would pay to Steinfeld & Company certain notes which he personally owed said company. The agreement refers to certain mining claims owned by the Copper Creek Mining Company and Calumet & Copper Creek Mining Company. The Kimbro group never belonged to either of these companies. We find nothing in the evidence which would warrant any judgment against the Copper State Mining Company as suggested.

The other assignments of error relate to the sufficiency of the evidence in support of certain findings of the court. We have carefully examined the evidence and find competent evidence therein to support the findings objected to. Detailed discussion of

these assignments would serve no useful purpose, and would unduly lengthen this opinion, which is already too long.

Counsel on both sides have been exceedingly diligent and have discussed the questions involved at great length. We have carefully considered all matters raised in the briefs, and we think there is ample evidence to support all material findings of the lower court, and that the judgment rendered was the only judgment which could have possibly been based upon the findings made.

It is therefore ordered that the judgment of the lower court be, and it is, affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.

NOTE.—Judge LAMSON of the superior court of Yavapai county sat in the place of Judge ROSS, who, on account of illness, was unable to participate in the hearing.