713 P.2d 343

**OHACO SHEEP CO., INC., an Arizona corporation, Defendant-Appellant,**

v.

**HEIRS OF Mike OHACO, to wit: M.J. Ohaco, Lillian O. McNally, Viola O. Anderson, Mary Delores Pafford; Heirs of Jose Antonio Manterola, to wit: Marianne Manterola, individually, First Interstate Bank as co-trustees of the Trust under the will of Jose Antonio Manterola for the benefit of Sylvia Manterola, Jose Antonio Manterola, Jr., Carmen Manterola Auza, Marie Manterola Guappone; Heir of Mario Jorajuria, to wit: Fidel Jorajuria; as claimants on computer number 5390, Defendants-Appellees.**

No. 1 CA–CIV 7519.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 16, 1986.

DeConcini, McDonald, Brammer, Yetwin & Lacey by Kenneth C. Sundlof, Jr., Phoenix, for defendant-appellant.

Lawrence O. Anderson, Phoenix, for defendants-appellees Ohaco heirs.

Stewart & McLean, Ltd. by Deirdre O. Stewart and Harry A. Stewart, Jr., Phoenix, for defendants-appellees Jorajurias & Manterolas.

JACOBSON, Judge.

The issue in this appeal is whether heirs of former shareholders in a corporation are entitled to share in a newly discovered asset of the corporation, absent a breach of fiduciary relationship or fraud at the time the former shareholders sold their stock.

This appeal arises out of the dissolution and distribution of the assets of the Arizona Woolgrowers Association, a non-profit corporation. That proceeding determined that Ohaco Sheep Company, Inc., owned approximately four percent interest in the assets of the Arizona Woolgrowers Association. The dispute here centers upon who is entitled to that share.

The Arizona Woolgrowers Association was founded in 1925 as a cooperative marketing association for members engaged in the raising of sheep and other agricultural pursuits. One of the association's members was a partnership formed in 1923 called "Mike Ohaco". This partnership consisted of four Basque immigrants: Mike Ohaco, Fermin Echeverria, Jose Manterola and Mario Jorajuria. At that time only Mike Ohaco was a naturalized United States citizen.

The trial court found that the partnership name "Mike Ohaco", was used to circumvent the Arizona Alien Land Law and United States Forest Service regulations, which limited property rights of aliens.[1] In 1933, the partnership was incorporated as the Ohaco Sheep Co., Inc. Each of the four former partners held 200 shares of stock in the corporation, although the shares of the non-citizens were held in trust by citizens. Manterola and Echeverria subsequently became United States citizens and obtained their respective shares outright, free of any trust. Jorajuria never became a citizen. The corporation, like the partnership before it, held a membership in the Arizona Woolgrowers Association. After incorporation all association dues were paid by corporate check.

In 1941, Ohaco sold his stock back to the corporation for 25 percent of the corporate assets. In 1945, Manterola also left the corporation, selling his stock for $61,683.07. In 1950, Jorajuria sold his interest in the corporation for $60,000.00. In all these sales, it is undisputed that the corporation's membership interest in the Arizona Woolgrowers Association was not considered an asset of the corporation, but was rather viewed as a liability requiring the payment of annual membership dues. It is also undisputed that all of these sales were arms length transactions and there is no contention that any of the transactions were tinged by fraud, overreaching or breach of a fiduciary relationship. Following the sale by Jorajuria, Fermin Echeverria and his heirs have been the sole owners of all shares in Ohaco Sheep Company.

As the sheep industry in Arizona flourished, so did its association. By 1974 the Arizona Woolgrowers Association had considerable assets, consisting primarily of real estate purchased to protect sheep drive trails between the summer mountain ranges of northern Arizona and the southern and western desert winter ranges.[2]

In 1974, the present action to dissolve the Association and to distribute its assets was filed. As part of that dissolution and distribution, the trial court found that Ohaco

---

1. The appellants argue that this finding was based upon impermissible hearsay. We also question the legal soundness of the finding since, at least as to the Arizona Alien Land Law, it is clear that these non-citizen Spaniards could hold land and property in Arizona. *See* A.R.S. § 4716 (1913) (amended by Laws 1917, ch. 43) However, in view of our resolution of this matter, we do not deem this finding material.

2. Although the record is not clear it appears that the land acquisitions by the Association occurred in the late 1940's. Therefore, at least as far as Ohaco and Manterola were concerned, an evaluation of the Association membership as minimally valuable may have been accurate.

144

Sheep Company was a participating member of the Association and held a 4.02860 percent interest.

The court then undertook a determination of various claims within each membership interest. The dispute among the claimants to the Ohaco Sheep Company's interest was designated Claim 5390. The protagonists in Claim 5390 are the corporation itself and the heirs of the former shareholders, Ohaco, Manterola and Jorajuria. At this time all of the founding shareholders of Ohaco Sheep Company are deceased and the dispute is among the surviving heirs.

In resolving this dispute the trial court found that from 1933 to 1951, the corporation was operated as a partnership. The court then concluded:

> It would be inequitable, unjust and not in keeping with the contributions of the four partners to their cooperative marketing association made from 1933 to 1951, to enforce a corporate entity concept so that their heirs and descendants received no benefits from the dues and commissions paid during that period of time.

The court also concluded that the heirs of the former stockholders were not estopped to deny the corporate existence because their predecessors had formed a partnership to avoid unconstitutional restrictions placed on three of the four partners.

The court awarded the heirs of the former stockholders various percentage interests in Ohaco Sheep Company's Arizona Woolgrowers Association membership. These percentages were based on each shareholder's percentage interest in the company and on the number of years each shareholder held an interest.

Ohaco Sheep Company has appealed, contending the trial court improperly allowed former stockholders of the corporation to share in a present corporate asset. The trial court made numerous findings of fact and conclusions of law. Those we deem both material to the resolution of this matter, and factually supportable are:

20. Despite the corporate form, the four (4) original partners continued to operate Ohaco Sheep Company Inc. in the same manner as they had during the term of the partnership, as long as they held an interest in it....

. . . .

27. There as [sic] an extremely close and confidential relationship between the men; they shared a common background which was foreign to many of the early Arizona settlers; as such, they banded together for business and social reasons. ... In order to succeed, it was necessary for them to form a close bond of trust and confidence; to avoid any of the natural tendencies of men to become jealous and self-dealing, each man contributed an equal share to the partnership and received an equal share in the partnership assets, profits and losses.

. . . .

31. On July 21, 1941 at a special meeting of the stockholders and Board of Directors Mike Ohaco and his wife pulled their assets out of the corporation....

. . . .

33. From 1941 to 1945, the three (3) remaining members of the original partnership each held a ⅓ interest in the corporation.

33.[sic] In 1945, Jose Antonio Manterola terminated his relationship to the corporation and received one-third (⅓) of its assets....

35. At no time during these meetings wherein the relationships of the Ohacos, and Jarajuria [sic] or Echeverria were discussed, was there any discussion or division of the ownership interest of each member of Ohaco Sheep Company, Inc. in the Arizona Woolgrowers Association. This asset was never given a value for purposes of a division of the partnership/corporation, or [sic] was it ever listed as an asset of the partnership and/or corporation....

. . . .

37. Mario Jarajuria [sic] and Fermin Echeverria each had a one-half interest in the corporation from 1945 to 1951....

The Arizona Woolgrowers Association interest was not assigned a value as one of the corporate assets at that time.

38. [O]n July 27, 1950, ... Mario Jarajuria [sic] sold his interest for $60,000 to Fermin and Benancia Echeverria....

■ We also accept the trial court's legal conclusion that, in spite of the corporate form, the parties dealt with each other as partners.[3] Nonetheless, the legal result is the same regardless whether we characterize the original parties as former stockholders or former partners. We note that stockholders of a purported corporation are generally estopped to deny the corporate existence. 18 C.J.S. *Corporations* § 1106 (1939 Supp.1985). This principle applies not only as against the corporation and its receivers or assignees, but also as against other stockholders or members. *Id.*

■ Assuming, however, the original partners were still partners when Ohaco, Jorajuria and Manterola sold their interests in the corporation, the heirs of these selling partners must be denied relief in the absence of fraud or a breach of faith. Partners owe a duty of utmost good faith in dealing with each other. This duty requires full disclosure of all material facts, within each partner's knowledge relating to partnership affairs and applies where one partner sells his interest in the partnership to another partner. *Creswell v. Keith*, 235 Ark. 653, 361 S.W.2d 542 (1962). Hence, in the absence of evidence that the buying partner had superior knowledge concerning the value of the assets being sold, concealed the true value of the assets or was guilty of fraud or misrepresentation, a selling partner has no right to later discovered partnership assets. *Wiley v. Brundred*, 158 Pa. 579, 28 A. 174 (Pa.1893). In *Wiley*, former partners who had sold their interests to another partner, asserted that they were entitled to share in a claim of the partnership that existed at the time of the sale, but was not realized until after the sale. The observations of *Wiley*, while almost 100 years old, are as applicable today as when written:

[If] nothing was said about the matter, and if nothing was concealed, and if the defendant had no knowledge of the claim that was superior to that of his partners, it is difficult to understand upon what ground the plaintiffs' claim can be sustained. The circumstance that it did not appear on the trial balance as an asset of the firm is of no sort of consequence, as there was no reason why it should be there. It was not an ascertained, definite claim, as for goods sold, or for anything due. It was, at the best, an undefined, uncertain, unproved, unliquidated right of action, which might or might not be sustained, and about which none of the parties had any explicit knowledge, or anything more than a belief. What was its amount, if it had any amount, was totally unknown to all.

The *Wiley* court held that under these circumstances the former partners were not entitled to share in an asset which subsequently acquired value. For similar holdings that a selling partner has no interest in *after discovered assets* of the partnership, absent concealment or superior knowledge on the part of the buying partners, *see*, *Heath v. Van Sickle*, 257 Mich. 369, 241 N.W. 195 (1932); *Wilson v. Day*, 253 Fed. 572 (D. Idaho 1918), *affirmed*, 260 Fed. 788 (9th Cir.1919); *Singer v. Friedman*, 85 F.2d 690 (D.C. Cir.1936); *Kelly v. Kelly*, 411 S.W.2d 953 (Tex.Civ.App.1967).

■ Here, as in *Wiley* we are dealing with an asset of the corporation/partnership, namely its membership in a non-profit corporation, which had little value, if any, at the time of the individual sales. It was

---

3. We make this concession strictly on the basis that whether the original parties were former stockholders or former partners the legal result is the same. As a pure legal issue the trial court's legal conclusion is probably not supportable:

Stockholders and members of a purported corporation are ordinarily estopped to deny its corporate existence where they have participated in holding it out as a corporation. This estoppel is effective to prevent such a denial not only as against the corporation or its receiver or creditors but as between the stockholders or members themselves.

18A Am.Jur.2d Corporations § 270 at 184 (1965).

simply a chose in action. It is only because of later occurring events over which none of the original parties had control—the appreciation in land values and the lack of necessity for trail drives—that the Arizona Woolgrowers Association asset increased in value. No evidence before the trial court indicates that the purchasing partners had superior knowledge as to the value of this hidden asset in 1941, 1945 or 1951. Nor did any evidence reveal that they concealed its true value or that they were guilty of fraud or misrepresentation. In the absence of such evidence, the trial court's conclusion that heirs of the selling partners were entitled to share in an asset which subsequently acquired value is without legal or equitable foundation.

To hold otherwise would be tantamount to declaring that if heirs of Ohaco, Manterola and Jorajuria had discovered gold on the property they received as a result of the sales of their interests in the "partnership," they would be required to share that gold with the Echeverria heirs.

The judgment of the trial court is reversed and the matter remanded with directions to declare that the entire interest of the Ohaco Sheep Company in the Arizona Woolgrowers Association belongs solely to the corporate entity.

GRANT, P.J., and LACAGNINA, J., concur.