NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

POWERS STEEL & WIRE PRODUCTS, INC.,
*Plaintiff/Appellant*,

v.

VINTON STEEL, LLC, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 20-0652
FILED 11-23-2021

Appeal from the Superior Court in Maricopa County
No.  CV2018-011427
The Honorable Roger E. Brodman, Judge *Retired*

**AFFIRMED**

COUNSEL

The Quinlan Law Firm, LLC, Phoenix
By William John Quinlan, Eric T. Schmitt
*Counsel for Plaintiff/Appellant*

Curl & Glasson, PLC, Tucson
By J. C. Patrascioiu, James William Rappaport
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

---

**M O R S E**, Judge:

¶1        Powers Steel and Wire Products, Inc. ("Powers Steel") appeals the grant of summary judgment to Vinton Steel LLC ("Vinton Steel") and its manager, David Villarreal (collectively "Defendants").  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Powers Steel is a family-owned steel fabricator and distributor.  William Powers[1] worked as an employee, director, and officer at Powers Steel until he retired in December 2017.  William still owns approximately 16.7% of Powers Steel's non-voting shares.  Alice Powers (William's aunt) holds the entirety of Powers Steel's voting stock.  Alice's five children and William hold equal portions of the non-voting shares. Before William resigned, all shareholders also served as corporate directors. Powers Steel alleges that William "continues to hold decision-making powers and responsibilities as a shareholder in [Powers Steel]."

¶3        William did not covenant not to compete with Powers Steel, and, after retiring, started Powers Reinforcing Fabricators, LLC ("PRF").

¶4        Vinton Steel is a rebar supplier that supplied Powers Steel until March 2018.  When William started PRF, Vinton Steel extended lines of credit for PRF to purchase steel.

¶5        Powers Steel sued William and PRF in February 2018, asserting William breached fiduciary duties he owed to Powers Steel.  *See generally Powers Steel & Wire Prods. Inc. v. Powers*, 1 CA-CV 19-0136, 2021 WL 248634, at *1-2, ¶¶ 2-6, 13 (Ariz. App. Jan. 26, 2021) (mem. decision) (affirming denial of preliminary injunction and noting superior court's subsequent grant of summary judgment in favor of William and PRF).

---

[1]        We refer to members of the Powers family by their first names.

**¶6**        In August 2018, Powers Steel filed this lawsuit against Defendants, asserting that they aided and abetted William's breach of fiduciary duties and tortiously interfered with Powers Steel's business expectancies.

**¶7**        Defendants moved for summary judgment.  After a partial ruling and supplemental briefing, the superior court eventually granted summary judgment to Defendants on all claims.  The court held that (1) no evidence supported a breached duty through a partnership agreement or steel purchases, (2) any agreement was not a breach but a mere preparation to compete, and (3) Powers Steel failed to establish non-speculative damages.

**¶8**        Defendants sought fees as a sanction.  The superior court found that though "the case was brought for harassment" it could not find that Powers Steel pursued the case "solely or primarily" to harass Defendants.   But the court also found that Powers Steel sought unreasonable, disproportional, and inappropriate discovery.   The court further found that Powers Steel "failed to make complete and timely disclosures," and awarded Defendants $87,877 in attorney fees under A.R.S. § 12-349.  The court also awarded $10,701 in costs and $26,993 as a sanction under Rule 68(g).

**¶9**        Powers Steel timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**        We review the grant of summary judgment de novo, "viewing the facts and reasonable inferences in the light most favorable to the non-prevailing party." *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015).  We review the imposition of sanctions for an abuse of discretion.  *Lund v. Donahoe*, 227 Ariz. 572, 578, ¶ 19 (App. 2011).

## I.        Aiding and Abetting.

**¶11**        Aiding and abetting a breach of fiduciary duty requires: (1) a breached fiduciary duty; (2) the defendant's knowledge of that breach; (3) the defendant's substantial assistance in the breach; (4) a causal relationship between defendant's assistance or encouragement and the breach; and (5) the breach injured the plaintiff.  *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 495, ¶ 64 (App. 2008).

¶12        Powers Steel's claim is based on two separate alleged duties
—William's duty as an employee during his employment and his alleged
duty as a shareholder following his employment.  Both arguments fail.

### A.        William Did Not Owe a Fiduciary Duty as a Minority Shareholder of Non-Voting Stock.

¶13        Powers Steel's post-December 2017 claim theorizes that
William, as a minority shareholder in Powers Steel, owed a fiduciary duty.
"The existence of a fiduciary duty is a question of law we review de novo."
*Maxfield v. Martin*, 217 Ariz. 312, 314, ¶ 12 (App. 2007).

¶14        Generally, shareholders do not assume fiduciary duties when
they acquire shares in a corporation.  *Compare* A.R.S. §§ 10-830(A), -842(A)
(providing fiduciary duties for corporate officers and directors), *with* A.R.S.
§ 10-622 (providing shareholders have no liability to the corporation or for
the acts or debts of the corporation); *see also Duties of shareholders*, 6 Ariz.
Prac., Corporate Practice § 6:119 ("As a general rule, shareholders as such
owe no duty to the corporation in which they own shares.").  But a majority
shareholder is more akin to an officer or director and "occupies a fiduciary
relation to the holders of the minority stock and the corporation, who can
only act through him."  *Heffern Coop. Consol. Gold Mining & Milling Co. v.
Gauthier*, 22 Ariz. 67, 69-70 (1920); *see also Garrett v. Reid-Cashion Land &
Cattle Co.*, 34 Ariz. 245, 262-63 (1928) (holding that majority corporate
shareholders must exercise their power "with due regard for the interests
of the minority"); *accord Steinfeld v. Copper State Mining Co.*, 37 Ariz. 151, 163
(1930).  Thus, a majority shareholder with the ability to manage and control
a corporation owes the same fiduciary duty as an officer or director.  *Mims
v. Valley Nat'l Bank*, 14 Ariz. App. 190, 192 (1971) (citing *Steinfeld v. Nielsen*,
15 Ariz. 424 (1913)).  As the United States Supreme Court held, "[t]he
majority has the right to control; but when it does so, it occupies a fiduciary
relation toward the minority, as much so as the corporation itself or its
officers and directors."  *S. Pac. Co. v. Bogert*, 250 U.S. 483, 487-88 (1919);
*accord Pepper v. Litton*, 308 U.S. 295, 306 (1939).

¶15        Powers Steel asserts an exception to this general rule such that
minority shareholders in closely held corporations owe a fiduciary duty
"due to close corporations' strong resemblance to partnerships." Even if we
assume that Powers Steel is closely held,[2] William's ownership interest in

---

[2]        The parties dispute whether Powers Steel is a closely held
corporation.  *See Albers v. Edelson Tech. Partners, L.P.*, 201 Ariz. 47, 56, ¶ 38

Powers Steel is not equivalent to a partnership interest and does not give rise to a fiduciary duty.

**¶16**        In limited circumstances, Arizona courts have considered closely held corporations as similar to partnerships. In *Funk v. Spalding*, our supreme court addressed a dispute between two 50-50 shareholders in a business "operated as a partnership." 74 Ariz. 219, 221 (1952). The supreme court found the two shareholders had a fiduciary relationship based on their "absolute confidence in each other" and that one shareholder's absence due to World War II placed a duty on the remaining shareholder to protect the absent shareholder's interest in the business. *Id.* at 224. The court held that the aggrieved shareholder was not required to sue the other derivatively for his share of profits, in part, because of the fiduciary relationship between partners. *Id.* Relying on this distinction, other Arizona courts have recognized a fiduciary relationship between 50-50 shareholders. *See Johnson v. Gilbert*, 127 Ariz. 410, 411-12 (App. 1980) (noting that when 50-50 shareholders "operated more as partners than in strict compliance with the corporate form," a derivative action for an accounting was unnecessary), *overruled on other grounds by Turley v. Ethington*, 213 Ariz. 640 (App. 2006); *see also Wichansky v. Zowine*, CV-13-01208-PHX-DGC, 2016 WL 11002479, at *4 (D. Ariz. Apr. 19, 2016) (finding 50-50 owners of closely held corporation owed each other fiduciary duty).

**¶17**        But outside the equal-ownership context, Powers Steel does not cite, and we cannot find, an Arizona case extending the fiduciary duty of partners to <u>all</u> closely held corporations. Powers Steel primarily relies on *Ohaco Sheep Co. v. Heirs of Ohaco*, where the trial court found that four equal shareholders reconfigured their partnership as a corporation but continued to operate as a partnership. 148 Ariz. 142, 143-44 (App. 1986). But *Ohaco Sheep* does not support Powers Steel's argument. This Court accepted "the trial court's legal conclusion that, in spite of the corporate form, the parties dealt with each other as partners." *Id.* at 145. But we described the trial court's conclusion as "probably not supportable" and the concession was made "strictly on the basis that whether the original parties were former stockholders or former partners the legal result [wa]s the same." *Id.* at 145 n.3. Other cases cited by Powers Steel are similarly unhelpful. *See, e.g., Dooley v. O'Brien*, 226 Ariz. 149, 151, 154-55, ¶¶ 2, 21-22 (App. 2010) (holding that a director and minority shareholder in closely held company had a

_____

(App. 2001) (noting closely held companies have (1) few shareholders, usually "two or three," (2) who are acquainted with each other, (3) are active in the business, and (4) there is no market for their shares).

legal, not contractual, right to personally seek an accounting for purposes of attorney fee statute).

¶18　　　　In the absence of persuasive Arizona authority, Powers Steel cites out-of-state cases for the proposition that shareholders in closely held corporations always owe each other fiduciary duties. *See Donahue v. Rodd Electrotype Co. of New England*, 328 N.E.2d 505, 515 (Mass. 1975). But the *Donahue* rule is not universal. *See Nixon v. Blackwell*, 626 A.2d 1366, 1380-81 (Del. 1993) (refusing to create special rules applicable to closely held corporations); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. 1997) ("[A] co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder."); *Carson Cheng v. AIM Sports, Inc.*, CV-10-3814-PSG-PLAX, 2012 WL 12953239, *3 (C.D. Cal. May 11, 2012) (holding that under California law a minority shareholder in a closely held corporation "did not owe a fiduciary duty to other shareholders"); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 384 (7th Cir. 1990) ("Corporations are not partnerships. Whether to incorporate entails a choice of many formalities. . . . So it is understandable that not all states have joined the parade."); *see also* Douglas K. Moll, *Of Donahue and Fiduciary Duty: Much Ado About . . .?*, 33 W. New Eng. L. Rev. 471, 485 (2011) ("[I]t is simply inaccurate to read *Donahue* for the proposition that partnership law applies in its entirety to closely held corporation disputes.").

¶19　　　　*Funk* and *Johnson* persuade us not to follow the *Donahue* rule. Because they involved 50-50 shareholders operating as partners, the issue presented was the plaintiffs' suits against the defendant shareholders directly rather than derivatively. *See Funk*, 74 Ariz. at 221, 224; *Johnson*, 127 Ariz. at 412. Those courts allowed suits directly against defendants who, by virtue of their equal ownership and the way the corporations were managed, had the power to control, or at least veto, corporate actions. *See Funk*, 74 Ariz. at 224 (finding "Spalding's enforced absence from the business while engaged in the service of his country placed upon Funk as manager of the corporation the duty to protect Spalding's interest"); *Johnson*, 127 Ariz. at 411 (noting that the two owners "could not agree" and a "deadlock ensued").

¶20　　　　Thus, as discussed, *supra* ¶ 14, Arizona law imposes a fiduciary duty on shareholders who can exercise control over the corporation. *See Steinfeld*, 37 Ariz. at 163; *Heffern Coop.*, 22 Ariz. at 70; *Mims*, 14 Ariz. App. at 192. The same control principle applies to partnerships at common law. *See Jolly v. Kent Realty, Inc.*, 151 Ariz. 506, 512 n.4 (App. 1986) ("The fundamental requisites of a partnership . . . [include] community of power in administration."); *Tafoya v. Trisler*, 8 Ariz. App. 250, 253 (1968)

("[T]he right of control or any voice in the control of a business enterprise should be regarded as an incident of proprietorship, and its presence or absence may be of great weight in determining whether or not a particular relation constitutes a partnership." (quoting *Holliday v. Taylor*, 249 S.W.2d 941, 944 (Tex. Civ. App. 1952))). We decline Powers Steel's invitation to expand the fiduciary duties of shareholders in Arizona and see no reason why the same focus on control should not apply if the corporation is closely held by several shareholders. *See* American Law Institute, *Principles of Corp. Governance* ("*Principles*") § 1.10 (1994) (stating that a person with less than 25 percent voting shares "is not presumed to be in control of the corporation by virtue solely of ownership"); *see also AMERCO v. Shoen*, 184 Ariz. 150, 155 (App. 1995) (noting the *Principles* "qualif[y] for the deference we traditionally grant to the Restatements").

**¶21**        Nearly all the other cases cited by Powers Steel reach a similar conclusion. *See Kortum v. Johnson*, 755 N.W.2d 432, 436-37, 443, 445, ¶¶ 4, 8, 27-28, 35 (N.D. 2008) (finding several minority shareholders who collectively oppressed plaintiff minority shareholder owed a fiduciary duty); *McLinden v. Coco*, 765 N.E.2d 606, 609, 615-16 (Ind. Ct. App. 2002) (finding parties who, along with their sons, each owned 50% of company, owed fiduciary duties); *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995) (noting that "minority shareholders owe a duty of loyalty to a close corporation *in certain circumstances*") (emphasis added); *Hagshenas v. Gaylord*, 557 N.E.2d 316, 318, 322-23 (Ill. App. Ct. 1990) (holding that 50-50 shareholders in a close corporation owed fiduciary duties); *cf. I.P. Homeowners, Inc. v. Radtke*, 558 N.W.2d 582, 591-92 (Neb. Ct. App. 1997) (ruling that member of close corporation formed to purchase certain real property breached fiduciary duty by usurping corporation's opportunity to purchase the property).

**¶22**        Other states also hinge the existence of a fiduciary duty in a closely held corporation on the shareholder's ability to exert control. *See Schultz v. Scandrett*, 866 N.W.2d 128, 134, ¶ 16 (S.D. 2015) ("[C]ontrolling shareholders, or a group of shareholders acting together to exercise effective control, owe a fiduciary duty to minority shareholders in a closely held corporation."); *Advanced Commc'n Design, Inc. v. Follett*, 615 N.W.2d 285, 294 (Minn. 2000) ("But where a shareholder has only nonvoting shares in a closely held corporation and is not a director, as here, clearly any significant ability to control corporate decision-making is lacking."); *Zidell v. Zidell, Inc.*, 560 P.2d 1086, 1089 (Or. 1977) ("We have recognized that those in control of corporate affairs have fiduciary duties of good faith and fair dealing toward the minority shareholders."); *see also* A. Richard M. Blaiklock, *Fiduciary Duties Owned by Frozen-Out Minority Shareholders in*

*Close Corporations*, 30 Ind. L. Rev. 763, 770-74 (1997) (noting cases "almost uniformly tie[] the fiduciary duty of the minority shareholders to an ability to control some aspect of the corporation's activities").

¶23　　　　The record demonstrates that William did not have a controlling interest in Powers Steel by virtue of his status as a shareholder. William's shares were non-voting, and Alice alone owned all voting shares. Alice's five children are also non-voting shareholders who served as corporate officers. Powers Steel cites William's ability to obtain records and receive dividends, *see* A.R.S. § 10-1602(C) (providing shareholder access to certain records), but neither of these demonstrate control, *see Steinfeld*, 37 Ariz. at 163 ("Stockholders have merely the right to share in the profits through dividends, to vote on the choice of directors, and in the management of the corporation, and, upon dissolution or sale of its assets, to get their proportion of the proceeds after all debts have been paid."). Finally, nothing in the record suggests that Powers Steel sought to be treated as a partnership. *See Myrland v. Myrland*, 19 Ariz. App. 498, 502 (1973) (noting when determining the existence or non-existence of a partnership, "the facts, circumstances, and most important, the intention of the parties control").

¶24　　　　Powers Steel also cites assertions made by William in his amended counterclaim in the parallel litigation that he still has a "reasonable expectation" to an "effective say in the management of [Powers Steel]." But this document was generated after the court granted summary judgment and is attached to Powers Steel's motion for reconsideration. Our review "is limited to the record before the court when it considered the motion for summary judgment." *Desert Mountain Props. Ltd. P'ship. v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 215, ¶ 94 (App. 2010), *aff'd*, 226 Ariz. 419 (2011). Even if we considered the complaint, we would find it unpersuasive. An expectation of an "effective say in management" is not the same as control. Moreover, William sued derivatively as a shareholder, not as a partner, and as a minority shareholder he may argue that the controlling shareholders and directors owe him a fiduciary duty. *See Mims*, 14 Ariz. App. at 192; *Myrland*, 19 Ariz. App. at 502; *cf. Funk*, 74 Ariz. at 224 (noting plaintiff sued directly not derivatively); *Johnson*, 127 Ariz. at 412 (same).

¶25　　　　Because Powers Steel did not operate as a partnership and Powers Steel presented no evidence that William could exert control as a minority owner of non-voting stock, William did not owe Powers Steel a fiduciary duty by virtue of his stock ownership. The court correctly granted summary judgment to Defendants.

### B. Defendants Did Not Aid and Abet a Breach During William's Employment.

¶26        Employees owe fiduciary duties to their employers during their employment. *Pope*, 219 Ariz. at 492, ¶ 52. The crux of Powers Steel's remaining claim lies in its theory that Vinton Steel agreed to a partnership with William during the last few days in which William was employed at Powers Steel. Allegedly, the partnership included (1) preferential pricing, (2) a line of credit, and (3) for William to serve as Vinton Steel's "depot" in Phoenix. Powers Steel also asserts that William made large and suspicious steel purchases from Vinton Steel during his last two months of employment.

¶27        We agree with the superior court that a reasonable jury could not believe such a partnership was formed while William was still employed at Powers Steel. Powers Steel relies almost exclusively on William's hearing testimony in a different case about a misdated bank application that purportedly memorialized the partnership.[3] All parties agree the date on the application was incorrect and, in a clarifying affidavit, William later denied Powers Steel's allegations and explained that his confusion at the hearing was based on that incorrect date. We reject Powers Steel's argument that the affidavit should be discounted as a "sham." *See MacLean v. State Dep't of Educ.*, 195 Ariz. 235, 241, ¶ 20 (App. 1999) (holding affidavits "may supplement or clarify prior inconsistent deposition testimony if the affiant was confused at deposition and the affidavit explains those aspects of the deposition testimony" (cleaned up)). Apart from William's later-clarified testimony, and the incorrectly dated bank application, no evidence suggests that Vinton Steel and William negotiated an agreement during his employment at Powers Steel. Thus, we conclude that "reasonable people could not agree with the conclusion advanced by" Powers Steel. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). Accordingly, the superior court properly granted summary judgment on this ground.

¶28        However, even if we were to assume that Powers Steel presented evidence that William and Defendants agreed to the alleged partnership, we would likewise affirm because such actions would not amount to a breached fiduciary duty.

---

[3]        The court noted Defendants were not parties to the other proceeding but did not rule on their hearsay objection to William's prior testimony. *See* Ariz. R. Evid. 803(25).

### 1. William's Alleged Actions Were Permitted Preparations to Compete.

**¶29** In Arizona, an employee owes a fiduciary duty of loyalty to the employer that precludes him from soliciting employees or customers for a rival business before the end of his employment, or from engaging in other similar acts in direct competition with his employer. *See Pope*, 219 Ariz. at 492, ¶ 55; *see also* Restatement (Third) of Agency § 8.01 (2006). However, that duty allows for pre-termination preparation for competition. *Pope*, 219 Ariz. at 492, ¶ 53; *see also McCallister Co. v. Kastella*, 170 Ariz. 455, 457 (App. 1992) ("Thus, before the end of his employment, [an employee] can properly purchase a rival business and upon termination of employment immediately compete." (quoting Restatement (Second) of Agency § 393 cmt. E)); *Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 394-95, ¶ 19 (App. 2010); Restatement (Third) of Agency § 8.04.

> An agent who plans to compete is free to make extramural arrangements for setting up a new business, such as incorporating a new firm and arranging for space and equipment. On the other hand, an agent or employee is not free, while still employed, to commence doing business as a competitor or to solicit customers away from the principal.

Restatement (Third) of Agency § 8.04 cmt c.

**¶30** The duty of loyalty when preparing to compete focuses on protecting an employer's customers and other employees, the loss of which undoubtably can damage a business. *See* Restatement (Third) of Agency § 8.04 cmt. c ("[A]n agent or employee is not free, while still employed . . . to solicit customers away from the principal."); *Principles* § 5.06 cmt. e (noting duty breached if director solicits employees or customers while still employed). But there is no allegation in this record that William solicited Powers Steel employees or customers. The activity for which Powers Steel faults William is the solicitation of its *supplier*—Vinton Steel. Suppliers are not customers. *See Wolfe Elec., Inc. v. Duckworth*, 266 P.3d 516, 525-27 (Kan. 2011) (finding soliciting employer's suppliers did not violate a covenant not to solicit customers). Powers Steel does not cite, and we cannot find, an Arizona case concluding that such act violates the duty of loyalty. A search of out-of-state cases similarly reveals no persuasive authority.

**¶31** Instead, the Restatement of Agency acknowledges that an employee preparing to compete may take actions "not equally available to third-party competitors as a practical matter." Restatement (Third) of

Agency § 8.04 cmt. c. As an example, the Restatement notes that "an agent's work may require the agent to develop and maintain good relationships with the principal's customers and suppliers; the agent knows their identity and has ongoing and specific associations with them that a third party external to the principal's organization would likely not have developed." *Id.*

**¶32**      "The line separating mere preparation from active competition may be difficult to discern in some cases." *Pope*, 219 Ariz. at 492, ¶ 54 (cleaned up). This is not such a case. William's activity was manifestly preparatory. *See Taser*, 224 Ariz. at 395, ¶ 22 (holding that development of a business plan did not compete with employer's business activities, no matter the level of included detail); *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564, 571 (Md. 1978) (holding conduct was "manifestly preparatory in nature" where employees "contacted and consulted with various municipal agencies, utility companies, construction contractors, manufacturers and engineers concerning [a future business] and the purchase of equipment necessary to operate and maintain the . . . business"); *Midwest Janitorial Supply Corp. v. Greenwood*, 629 N.W.2d 371, 374, 376 (Iowa 2001) (finding that seeking a line of credit from a bank was preparatory and not actionable); *cf. Pope*, 219 Ariz. at 485-86, 489, 495-97, ¶¶ 9, 31, 68-70, 76 (affirming aiding and abetting verdict when competitor plotted with employee to solicit multiple co-workers).

**¶33**      William's position as an officer of Powers Steel does not change the analysis. "The mere fact that the director or senior executive makes preparations to compete before resigning from office is . . . not a breach of duty. It is the nature of the preparations and the extent to which they substantially hinder the business of the corporation that are significant." *Principles* § 5.06 cmt. e; *accord* Restatement (Third) of Agency § 8.04. William's preparations to compete included arranging future steel purchases from Vinton Steel. Such activity does not rise to the level of a substantial hindrance of Powers Steel's business. *See Principles* § 5.06 cmt. e. We similarly reject Powers Steel's argument that William had a duty to disclose his preparations. *See* Restatement (Third) of Agency § 8.04 cmt. c (noting "an employee or other agent who plans to compete with the principal does not have a duty to disclose this fact to the principal").

### 2.      William Did Not Usurp a Corporate Opportunity.

**¶34**      Powers Steel also argues that William usurped a corporate opportunity by not informing Powers Steel that Vinton Steel desired a "depot" in the Phoenix market. In their answering brief, Defendants did not

address the argument that failure to inform Powers Steel of the desire for a depot was equivalent to usurping a corporate opportunity. Instead, Defendants argue that there is no evidence they agreed to establish a depot and note that Defendants "never established a depot in Phoenix because it was not in [their] best interests." In our discretion, we decline to regard Defendants' response as a confession that William usurped a corporate opportunity. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).

**¶35** "Arizona courts have adopted a somewhat narrow view of the corporate opportunity doctrine," *Taser*, 224 Ariz. at 398, ¶ 33 n.20, which generally "prohibits fiduciary usurpation of a corporate opportunity." *AMERCO*, 184 Ariz. at 158. Our supreme court directs that the test "is whether the director has a specific duty to act in regard to the particular matter as a representative of the company. If there is no such duty, the director may acquire outside interests although the corporation may be more or less interested." *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 122 (1966); *see also Zeckendorf v. Steinfeld*, 12 Ariz. 245, 261-62 (1909) (holding that corporation must have "an interest, actual or in expectancy, in the property" to prevent acquisition by officer or director), *modified*, 225 U.S. 445 (1912).

**¶36** The opportunity must actually exist and not be merely "abstractly contemplated." *Taser*, 224 Ariz. at 399, ¶ 36. The doctrine does not extend to all business ideas discussed or learned about in the course of employment because "such [an] extension would have the effect of unnecessarily restraining competition" and "would effectively transform [an at-will] employment relationship to one bound by a de facto non-compete agreement." *Id.* Further, a corporate opportunity does not exist if it is not available to the corporation. *See Zeckendorf*, 12 Ariz. at 262 (noting no lost opportunity when corporation lacked resources to purchase disputed property).

**¶37** The present facts fall outside the prohibitions of the corporate opportunity doctrine. Powers Steel neither alleged that it desired to operate as a depot, nor that Vinton Steel would be willing to extend the same alleged offer to Powers Steel. *See Rankin v. Frebank Co.*, 121 Cal.Rptr. 348, 356 (Cal. Ct. App. 1975) (finding no lost opportunity when no evidence "remotely implies that [the offeror] would have been willing to sell his note at a discount to the corporation"); *see also* 3 Fletcher Cyc. Corp. § 862.10 (stating corporation can have no expectancy in an opportunity if the offering "party refuses to deal with it"). Finally, no depot was ever established, with PRF, Powers Steel, or any other company, leaving it as an abstract business idea. *See Taser*, 224 Ariz. at 399, ¶ 36.

**¶38** We similarly reject any argument that preferential pricing and credit for steel purchases were corporate opportunities. Prohibiting William from negotiating for the purchase of steel from Vinton Steel after the conclusion of his employment would amount to enforcing a non-existent non-compete agreement with Powers Steel. *See id.* On this record, William did not usurp a corporate opportunity.

### 3. Vinton Steel Did Not Aid and Abet a Misuse of Corporate Property.

**¶39** Finally, Powers Steel asserts that William breached his duties through large steel orders placed with Vinton Steel in the last months of his employment. Powers Steel argues this was a misuse of its property for the benefit of William and Defendants. *See* Restatement (Third) of Agency § 8.05. But Powers Steel fails to argue or explain how Defendants, who are in the business of selling steel, aided and abetted this alleged breach. Indeed, Powers Steel conceded that Defendants did not learn of William's pending retirement until after William had placed all but one of the seven allegedly suspicious orders. There is no evidence in the record that Defendants possessed even circumstantial knowledge sufficient to present an aiding and abetting claim on this ground. *See Dawson v. Withycombe*, 216 Ariz. 84, 102, ¶ 50 (App. 2007) ("[I]t must be shown that the defendants knew the conduct they allegedly aided and abetted was a tort.").

**¶40** In sum, Defendants cannot be liable for aiding and abetting because William either did not breach a fiduciary duty or Defendants lacked knowledge of the breach. Accordingly, the superior court properly granted summary judgment.

## II. Intentional Interference.

**¶41** Powers Steel also appeals the grant of summary judgment on its claim for intentional interference with a business expectancy.

**¶42** The relevant elements of a claim for tortious interference are: "the existence of a valid . . . business expectancy; the interferer's knowledge of the . . . expectancy; intentional interference inducing or causing a breach or termination of the . . . expectancy; and resultant damage to the party whose . . . expectancy has been disrupted." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 427 (App. 1995). The interference must also "'be "improper" for liability to attach.'" *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, ¶ 15 (2005) (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 388 (1985)). Several factors determine whether conduct is "improper," but our supreme court directs that we "give the

greatest weight" to "the nature of the defendant's conduct and the defendant's motive." *Id.* at 12, ¶ 22. But the "improper action" standard "must be applied with discrimination, particularly where the conduct in question takes place in the context of competitive business activities." *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483 (App. 1988).

**¶43** Conduct may be improper where it is "unlawful," that is "in violation of statutory provisions or contrary to established public policy." Restatement (Second) of Torts § 767 cmt. c. Here, Powers Steel argues Defendants' conduct was "unlawful because they aided and abetted [William's] breach of his fiduciary duties." We reject that argument for the reasons stated above. *See supra* ¶¶ 25, 27, 40.

**¶44** Powers Steel also argues that "the evidence here shows that Vinton and Villarreal entered the Partnership Agreement with the intention of putting [Powers Steel] out of business for the benefit of their partner [William]." The superior court concluded this assertion was "speculative" and "nonsensical."

**¶45** This Court previously rejected a similar argument as too speculative. *See Bar J Bar*, 158 Ariz. at 485 (rejecting argument that defendant "had an improper motive in that he was acting out of ill will"). "One who interferes with the contractual rights of another for a legitimate competitive reason does not become a tort-feasor simply because he may also bear ill will toward his competitor." *Id.* Accordingly, a business "competitor does not act improperly if [its] purpose at least in part is to advance [its] own economic interests." *Miller v. Hehlen*, 209 Ariz. 462, 471, ¶ 32 (App. 2005) (quoting *Bar J Bar*, 158 Ariz. at 485); *see Safeway Ins.*, 210 Ariz. at 12, ¶ 23 (rejecting argument "that lawyers have an improper motive simply because they seek to increase their fees by maximizing an award for a client").

**¶46** "A question of fact as to a specific motive is only material if one of the possible motives supported by the record may be considered improper . . . ." *Neonatology Assocs., Ltd. v. Phx. Perinatal Assocs. Inc.*, 216 Ariz. 185, 189, ¶ 15 (App. 2007). Powers Steel does not allege an improper motive. To the extent that Defendants offered William and PRF competitive steel pricing or a generous line of credit for steel purchases, this is nothing "more nefarious than business competition." *Id.* Summary judgment on Powers Steel's tortious interference with a business expectancy claim was therefore appropriate. *See id.* at 187, 189, ¶¶ 4, 15 (affirming summary judgment on tortious interference claim where there was no "evidence of anything more nefarious than business competition").

## III.  Attorney Fees.

**¶47**  Powers Steel challenges the superior court's award of attorney fees to Defendants, claiming that it "did not bring unnecessary, unsubstantiated claims warranting sanctions."  But the superior court did not award fees on that basis.  Instead, the superior court awarded attorney fees as a discovery sanction.  *See* A.R.S. § 12-349(A)(4).  After considering the superior court's well-reasoned sanction order, we conclude the court did not abuse its discretion.  *See Lund*, 227 Ariz. at 578-79, ¶ 19.

**¶48**  Defendants seek attorney fees on appeal under A.R.S. § 12-349, asserting the "appeal was brought without substantial justification and primarily for harassment."  We respectfully disagree and decline to award attorney fees.  However, as the prevailing parties, Defendants are awarded their costs upon timely compliance with ARCAP 21.

## CONCLUSION

**¶49**  We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA